**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**MAXWELL D. NALDER**                                    **PLAINTIFF**

**VERSUS**                              **CIVIL ACTION NO.** 3:25-cv-933-DPJ-ASH

**KELSEY A. WALSH, M.D.,
GLOBUS MEDICAL, INC. and
GLOBUS MEDICAL NORTH AMERICA, INC.**         **DEFENDANTS**

**COMPLAINT
(JURY TRIAL REQUESTED)**

COMES NOW, the Plaintiff, Maxwell D. Nalder, by and through undersigned counsel, and files this Complaint against the Defendants, Kelsey A. Walsh, M.D., Globus Medical, Inc. and Globus Medical North America, Inc., and would show unto the court the following:

A.  **PARTIES**

1.  Plaintiff, Maxwell D. Nalder, is an adult resident citizen of the State of Mississippi.

2.  Defendant, Kelsey A. Walsh, M.D., is an adult resident citizen of the State of North Carolina. She may be served with process at Pardee NeuroSpine Associates, 21 Turtle Creek Drive, Asheville, North Carolina 28803.

3.  Defendant, Globus Medical, Inc., is a Delaware corporation doing business in Mississippi with its principal place of business located at 2560 General Armistead Avenue, Audubon, Pennsylvania, 19403. It may be served with process through its registered agent, CORPORATION SERVICE COMPANY, 109 Executive Drive, Suite 3, Madison, Mississippi 39110.

4.  Defendant, Globus Medical North America, Inc., is a Delaware corporation doing business in Mississippi with its principal place of business located at 2560 General Armistead

Avenue, Audubon, Pennsylvania, 19403. It may be served with process through its registered agent, CORPORATION SERVICE COMPANY, 109 Executive Drive, Suite 3, Madison, Mississippi 39110.

### B. <u>JURISDICTION AND VENUE</u>

5. This Court has subject matter jurisdiction over all claims made herein pursuant to 28 USC §1332 (a)(1) because the Plaintiff and the Defendants are citizens of different States and the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

6. This Court is the appropriate venue for these claims pursuant to 28 USC §1391 (b)(2) because the events or omissions giving rise to the Plaintiff's claims occurred in this judicial district.

### C. <u>COMPLIANCE WITH STATUTES</u>

7. Proper written notice of intention to file this action has been provided to Defendant Walsh via certified mail, return receipt requested, in accordance with MISS. CODE ANN. §15-1-36. *See* Notice of Claim and return receipts attached hereto as Exhibit "A."

8. Pursuant to the requirements of MISS. CODE ANN. §11-1-58(1)(a), a Certificate of Compliance and Expert Consultation is attached hereto as Exhibit "B."

### D. <u>FACTS GIVING RISE TO CAUSE OF ACTION</u>

9. In 2024, Mr. Nalder began experiencing back pain which was radiating down his left leg.

10. At the time, Mr. Nalder was independent, employed, able to walk without a cane or walker and otherwise able to care for himself.

11. On December 18, 2024, Mr. Nalder presented to NewSouth NeuroSpine where he was seen by Dr. Kelsey A. Walsh.

12. Dr. Walsh noted that Mr. Nalder's back pain had recently worsened during a period when he was caring for his terminally ill wife, and that because his pain was limiting his ability to be active, he was ready to undergo surgery.

13. Dr. Walsh recommended that Mr. Nalder undergo minimally invasive left-sided L4-5 and L5-S1 transforaminal lumbar interbody fusion ("TLIF"). Surgery was scheduled for January 16, 2025.

14. On January 16, 2025, Dr. Walsh admitted Mr. Nalder to Merit Health River Oaks for surgery.

15. Her preoperative diagnosis was L4/5 spondylolisthesis with stenosis, and L5/S1 degenerative disk disease and stenosis.

16. During surgery, Dr. Walsh utilized a Globus Excelsius GPS ("EGPS") surgical robot, a device manufactured by Defendants Globus Medical, Inc. and/or Globus Medical North America, Inc.

17. According to an FDA Warning letter dated July 15, 2024, a copy of which is attached as Exhibit "C, " the EGPS device and associated interbody spine and cranial modules is "intended for use as an aid for precisely locating anatomical structures and for the spatial positioning and orientation of an instrument holder or guide tube to be used by surgeons for navigating and/or guiding compatible surgical instruments in open or percutaneous procedures provided that the required fiducial markers and rigid patient anatomy can be identified on CT scans or fluoroscopy."

18. In her operative report, Dr. Walsh noted that she used the EGPS device to place pedicle screws at L4, L5 and S1 on Mr. Nalder's right and left sides.

19. In her operative report, Dr. Walsh noted no complications or problems during surgery.

20. After surgery, Dr. Walsh noted that Mr. Nalder was extubated and transferred to recovery in stable condition.

21. When Mr. Nalder woke up in recovery, both Dr. Walsh and a nurse were at his bedside. Dr. Walsh advised Mr. Nalder that the "robotic arm had malfunctioned and that the L5 right pedicle screw was drilled in the wrong location."

22. Dr. Walsh evaluated Mr. Nalder's neurological function in both his left and right feet. Mr. Nalder's left foot was fine, but his right foot was weak and without flexion. Dr. Walsh advised Mr. Nalder that this was her primary concern and that he would be assessed again before discharge.

23. On January 17, 2025, Dr. Walsh evaluated Mr. Nalder and again commented that the EGPS had malfunctioned during surgery. She evaluated the neurological function in Mr. Nalder's feet. Again, his left foot was fine, but he was only slightly able to lift his right toes off of the floor and could not move his right foot at all.

24. On January 23, 2025, approximately 2 weeks after surgery, Mr. Nalder called Dr. Walsh's office with complaints of right hip pain and extreme fatigue in his right hip, leg and foot.

25. He was advised to see a hip specialist and ultimately saw a physician at Mississippi Sports Medicine who determined that Mr. Nalder had no problem with his hip and prescribed physical therapy.

26. On February 14, 2025, Mr. Nalder was again seen by Dr. Walsh who evaluated Mr. Nalder's neurological function noting the same deficits as before. She again commented that the EGPS had malfunctioned and that the L5 right pedicle screw had been drilled and placed "lower" than she intended.

4

27. On March 11, 2025, Dr. Walsh again evaluated Mr. Nalder's neurological function noting the same deficits as before. Dr. Walsh again commented that the EGPS had malfunctioned and she apologized for the problems that Mr. Nalder was then experiencing.

28. On April 10, 2025, Dr. Walsh evaluated Mr. Nalder for the last time, as she was moving to North Carolina. Mr. Nalder indicated that his right foot, leg and hip were essentially useless despite the fact that he had been undergoing physical therapy for quite some time. He further indicated that he had begun experiencing sharp, stabbing pain in his right lumbosacral area that would come and go.

29. Mr. Nalder asked Dr. Walsh about the EGPS so that he could better understand how it had allegedly malfunctioned. Dr. Walsh explained to him the process of how "diagramming" worked and indicated to him that during surgery the EGPS "rediagrammed" itself on Mr. Nalder's L4 vertebrae causing her to first misplace the screw and then to have to reposition it intraoperatively. She then went on to explain that the EGPS "rediagrammed" itself again on Mr. Nalder's right side causing her to misplace the L5 pedicle screw lower than she intended.

30. After Dr. Walsh moved to North Carolina, Mr. Nalder's care was assumed by Dr. Jack Moriarity.

31. On June 3, 2025, Mr. Nalder was seen by Dr. Moriarity who confirmed that Mr. Nalder's right lower extremity neurological deficits persisted.

32. Additionally, Dr. Moriarity confirmed that initially Dr. Walsh had placed the right L4 screw "too medial" and that it was repositioned during surgery. He also confirmed that Dr. Walsh had "inferiorly positioned" the right L5 screw and that it remained in such position. Dr. Moriarity suggested that Mr. Nalder undergo surgery to remove the right L5 screw.

33. Finally, Dr. Moriarity concluded that the weakness and other neurological deficits Mr. Nalder was experiencing likely resulted from the mispositioned right L4 screw that had been repositioned by Dr. Walsh during surgery.

### E.  CAUSE OF ACTION - MEDICAL MALPRACTICE

34. At all times herein, Kelsey A. Walsh, M.D. owed Mr. Nalder the duty to act as a reasonably prudent, minimally competent neurosurgeon under the circumstances which existed while he was her patient including on January 16, 2025 when she operated on him and afterward when Mr. Nalder continued to exhibit neurological deficits related to the surgery performed by Dr. Walsh.

35. Defendant Walsh was negligent and breached the applicable standard of care by misplacing the L4 and L5 pedicle screws during surgery and in failing to remove or reposition the L5 screw postoperatively considering Mr. Nalder's persistent neurological deficits.

36. As a result of the negligence of Defendant Walsh, Mr. Nalder suffered severe injuries and damages which are permanent in nature.

### F.  CAUSE OF ACTION - STRICT LIABILITY OF GLOBUS MEDICAL, INC. AND GLOBUS MEDICAL NORTH AMERICA, INC.

37. At all times relevant hereto, Defendants, Globus Medical, Inc. and Globus Medical North America, Inc., were actively engaged in the business of designing, manufacturing, and selling the EGPS surgical robot, including the one used by Dr. Walsh on January 16, 2025 to operate on Mr. Nalder.

38. Defendants are strictly liable to Mr. Nalder because defendants manufactured, supplied, sold warranted and placed into the stream of commerce a defective product, unreasonably dangerous to the consumer, knowing that the EGPS device would reach consumers without substantial change in its defective condition when it left defendants' control.

39. The EGPS device was unreasonably dangerous in that it causes surgeons such as Dr. Walsh to misplace surgical screws, a defect well known to Defendants as set forth in the FDA warning letter.

40. At the time that the EGPS device left the control of Defendants, who designed, manufactured, and/or sold it, the EGPS device was defective and in a defective condition because:

    a.    it deviated in a material way from the Defendants' specifications or from otherwise identical units manufactured to the same manufacturing specifications;

    b.    it failed to contain adequate warnings or instructions, and at the time the product left the control of the Defendants, Defendants, or one or both of them, knew or in light of reasonably available knowledge should have known:

        i.    about the danger that caused the damage for which recovery is sought and

        ii.    that the ordinary user, such as Dr. Walsh, would not realize its dangerous condition.

    c.    it was designed in a defective manner, and:

        i.    Defendants, or one or all of them, knew, or in light of reasonably available knowledge or in the exercise of reasonable care should have known, about the danger that caused the damage for which recovery is sought; and

        ii.    it failed to function as expected and there existed a feasible design alternative that would have to a reasonable probability prevented the

harm and injury suffered by Mr. Nalder, and which would have to a reasonable probability prevented the harm without impairing the utility, usefulness, practicality or desirability of the EGPS device to users or consumers of the EGPS device, and/or;

d.      it breached an express warranty or failed to conform to other express factual representations upon which Plaintiff and/or Dr. Walsh justifiably relied in electing to use the product, specifically including, but not limited to, representations that the EGPS device was sufficiently capable of aiding surgeons in the placement of surgical screws, the task undertaken by Dr. Walsh and otherwise guiding surgical instruments at the time the product failed and Mr. Nalder sustained injury.

41. The defective and unreasonably dangerous condition of the EGPS device proximately caused or contributed to cause the damages for which Mr. Nalder seeks recovery in this action from Defendants.

42. As a direct and proximate result of the conduct of Defendants Globus Medical, Inc. and Globus Medical North America, Inc., Plaintiff sustained serious injuries and damages.

### G.  CAUSE OF ACTION - BREACH OF IMPLIED WARRANTY BY GLOBUS MEDICAL INC. AND GLOBUS MEDICAL NORTH AMERICA, INC.

43. Defendants Globus Medical, Inc. and Globus Medical North America, Inc. warranted, both expressly and impliedly, through written materials, advertisements and sales representatives, that the EGPS device was of merchantable quality and fit for the ordinary purpose for which it was intended and distributed.

44. Dr. Walsh was a foreseeable user of the EGPS device, and it was being used in its intended manner at the time of Mr. Nalder's surgery.

45. The EGPS device was defective at the time it left the control of Defendants Globus Medical, Inc. and Globus Medical North America, Inc.

46. Plaintiff and Dr. Walsh relied on Globus to provide a merchantable EGPS device fit for the purpose for which it was intended.

47. Because of the defective and unreasonably dangerous design and/or manufacture of the EGPS device, Dr. Walsh misplaced the pedicle screws during Mr. Nalder's surgery and therefore the EGPS device was neither merchantable nor fit for ordinary purposes.

48. The defective and/or unreasonably dangerous condition of the EGPS device constituted a breach of defendants' express and/or implied warranties.

49. As a direct and proximate result of the defendants' breach of the express and implied warranties of the EGPS device, Mr. Nalder sustained injuries and damages.

## H.  DAMAGES

50. As a direct and proximate result of the negligence of Defendants, Maxwell D. Nalder is entitled to recover damages for the following:

     e.     medical expenses;

     f.     physical pain and suffering;

     g.     mental anguish and emotional distress

     h.     the loss of household services; and

     i.     future lost wages.

## I.  PRAYER FOR RELIEF

**WHEREFORE**, Premises Considered, the Plaintiff, Maxwell D. Nalder, prays this Court enter judgment against the Defendants, Kelsey A. Walsh, M.D., Globus Medical, Inc., and Globus

Medical North America, Inc. in an amount in excess of the jurisdictional minimum of this Court, for all costs of this action, post-judgment interest and any other relief deemed proper in the premises.

Dated: December 5, 2025.

Respectfully submitted,

**MAXWELL D. NALDER, PLAINTIFF**

BY: _____

WALTER C. MORRISON, IV (MSB #9653)
GAINSBURGH, BENJAMIN, DAVID,
MEUNIER & WARSHAUER, L.L.C.
240 Trace Colony Park Drive, Suite 100
Ridgeland, Mississippi 39157
Telephone: (601) 933-2054
Facsimile: (504) 528-9973
E-mail: wmorrison@gainsben.com