## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

| | | |
|---|---|---|
| MAXWELL D. NALDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | |
| | ) | CIVIL ACTION NO: 3:25-CV-933- |
| KELSEY A. WALSH, M.D.; GLOBUS | ) | DPJ-ASH |
| MEDICAL, INC.; AND GLOBUS | ) | |
| MEDICAL NORTH AMERICA, | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

## GLOBUS MEDICAL, INC. AND GLOBUS MEDICAL NORTH AMERICA, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Defendants Globus Medical, Inc. and Globus Medical North America, Inc. (collectively, "Globus") submit this brief in support of their motion to dismiss for failure to state a claim [Doc. 13].

## INTRODUCTION

This product liability case involves a Complaint that fails to mention the governing statute and that relies on a single *fact*—an alleged (but unexplained) "rediagramming" of a surgical robot during surgery—to support every single product liability theory provided by Mississippi law. The Complaint should be dismissed.

## BACKGROUND

### A.    Factual Allegations

Globus designs and manufactures medical devices. Compl., [Doc. 1] ¶ 37. One of its products, the ExcelsiusGPS ("EGPS"), is a robotic navigation device that helps

surgeons "precisely locat[e] anatomical structures" and "guid[e] compatible surgical instruments in open or percutaneous procedures[,] provided that the required fiducial markers and rigid patient anatomy can be identified on CT scans or fluoroscopy." *Id.* ¶ 17. In other words, the EGPS device serves as an "aid" for aligning and navigating surgical screws, provided that the surgeon verifies locational accuracy before insertion. *Id.*

In December 2024, Plaintiff Maxwell D. Nalder ("Mr. Nalder") saw Dr. Kelsey Walsh about his back pain. *Id.* ¶ 11. Dr. Walsh recommended he "undergo minimally invasive left-sided L4-5 and L5-S1 transforaminal lumbar interbody fusion." *Id.* ¶ 13. Dr. Walsh performed surgery on January 16, 2025. *Id.* ¶¶ 14, 37. During surgery, she utilized the EGPS device "to place pedicle screws at L4, L5, and S1 on Mr. Nalder's right and left sides." *Id.* ¶¶ 14, 16, 18. Her operative report "noted no complications or problems during surgery." *Id.* ¶ 19.

But when Mr. Nalder awoke from surgery, Dr. Walsh told him that the "robotic arm had malfunctioned and that the L5 right pedicle screw was drilled in the wrong location." *Id.* ¶ 21. She elaborated in follow-up visits that the EGPS device "rediagrammed itself" twice during surgery. *Id.* ¶ 29. First, it rediagrammed itself on the L4 vertebrae "causing her to first misplace the screw" and then "reposition it intraoperatively." *Id.* Second, it "rediagrammed itself again" on Mr. Nalder's right side "causing her to misplace the L5 screw lower than she intended." *Id.*[1]

---

[1] The facts alleged in Plaintiff's Complaint are taken as true for purposes of this motion only. *See Tyler v. Hennepin Cnty.*, 598 U.S. 631, 636 (2023).

Dr. Walsh relocated her practice to another state sometime between April and June 2025. *See id.* ¶¶ 28–30. Upon her departure, Dr. Jack Moriarity assumed Mr. Nalder's care. *Id.* ¶¶ 30–31. In a June 2025 visit, Dr. Moriarity "confirmed" that Dr. Walsh "placed the right L4 screw 'too medial' and that it was repositioned during surgery." *Id.* ¶ 32. He also confirmed that "Dr. Walsh had 'inferiorly positioned' the right L5 screw and that it remained in such position." *Id.* Dr. Moriarity concluded that "the weakness and other neurological deficits Mr. Nalder was experiencing likely resulted from the mispositioned right L4 screw" that Dr. Walsh repositioned during surgery. *Id.* ¶ 33.

### B.   Claims Alleged

In his Complaint [Doc. 1] filed on December 5, 2025, Mr. Nalder seeks to recover from both Dr. Walsh and Globus for his alleged injuries. *Id.* ¶¶ 34–50; *id.* at 9–10 (Prayer for Relief). The Complaint purports to allege two claims against Globus: strict liability, *id.* ¶¶ 37–42, and breach of implied warranty, *id.* ¶¶ 43–49.

Mr. Nalder alleges that Globus is "strictly liable" because it "manufactured, supplied, sold[,] warranted and placed into the stream of commerce a defective product, unreasonably dangerous to the consumer, knowing that the EGPS device would reach consumers without substantial change in its defective condition when it left defendants' control." *Id.* ¶ 38. He alleges the EGPS device was "unreasonably dangerous in that it causes surgeons such as Dr. Walsh to misplace surgical screws." *Id.* ¶ 39. He bases his "strict liability" claim on four separate theories: (1)

manufacturing defect, *id.* ¶ 40(a); (2) failure to warn, *id.* ¶ 40(b); (3) defective design, *id.* ¶ 40(c); and (4) breach of an express warranty, *id.* ¶ 40(d).

The implied warranty claim alleges that Globus "warranted, both expressly and impliedly, through written materials, advertisements and sales representatives, that the EGPS device was of merchantable quality and fit for the ordinary purpose for which it was intended and distributed." *Id.* ¶ 43. Mr. Nalder alleges Dr. Walsh was a "foreseeable user" of the device, and that she used it "in its intended manner" during his surgery. *Id.* ¶ 44. He alleges the device was defective when it left Globus's control, and that he and Dr. Walsh "relied on Globus" to provide a merchantable device. *Id.* ¶¶ 45–46. He concludes that the "defective and unreasonably dangerous design and/or manufacture of the EGPS device" caused Dr. Walsh to "misplace[] the pedicle screws," which shows the device was "neither merchantable nor fit for ordinary purposes." *Id.* ¶ 47.

## LEGAL STANDARD

A court "must dismiss" a claim under Rule 12(b)(6) if the plaintiff's factual allegations "fail to 'state a claim to relief that is plausible on its face,'" *Amin v. United Parcel Serv., Inc.*, 66 F.4th 568, 572–73 (5th Cir. 2023) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)), "or fail 'on the basis of a dispositive issue of law,'" *id.* (quoting *Neitzke v. Williams*, 490 U.S. 319, 326 (1989)). A claim is plausible if the complaint contains sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

4

The Court accepts the well-pleaded allegations as true and makes reasonable inferences in the plaintiff's favor. *Robinson v. Midland Cnty.*, 80 F.4th 704, 709 (5th Cir. 2023). But those "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and the Court must disregard both "conclusory statements" and "[t]hreadbare recitals of the elements of a cause of action," *Iqbal*, 556 U.S. at 678. So, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Deese v. Immunex Corp.*, No. 3:11-CV-373-DPJ-FKB, 2012 WL 463722, at *1 (S.D. Miss. Feb. 13, 2012) (internal quotation marks and alterations omitted) (quoting *Twombly*, 550 U.S. at 556).

## ARGUMENT

### I.   The Complaint should be dismissed because it does not plead claims under the MPLA.

The MPLA controls "any action for damages caused by a product, including, but not limited to, any action based on a theory of strict liability in tort, negligence or breach of implied warranty, except for commercial damage to the product itself." Miss. Code Ann. § 11-1-63. Under the MPLA, "[t]he manufacturer, designer or seller of [a] product shall not be liable if the claimant does not prove" one of the MPLA's statutorily defined theories. *Id.* § 11-1-63(a). The MPLA "abrogate[s] products-liability claims based on strict-liability . . . theories." *Elliott v. El Paso Corp.*, 181 So. 3d 263, 268 (Miss. 2015). It likewise bars implied warranty claims that "parrot[]" the same "theor[ies] of recovery" prescribed by the MPLA. *Taylor v. Smith & Nephew,*

*Inc.*, No. 3:18-CV-234-DPJ-JCG, 2019 WL 6617404, at *3 (S.D. Miss. Dec. 5, 2019) (quotation omitted).

Here, the MPLA plainly governs Mr. Nalder's strict liability and implied warranty claims. Both claims rest on allegations that Mr. Nalder suffered physical harm allegedly resulting from Dr. Walsh's use of the EGPS device during his surgery. *See, e.g.,* [Doc. 1] ¶¶ 39, 41, 46–49. So the MPLA provides his "exclusive remedy." *Funches v. Progressive Tractor & Implement Co., LLC*, 905 F.3d 846, 850 (5th Cir. 2018) (quoting *Elliott*, 181 So. 3d at 70). Yet he proceeds under common law, as his Complaint does not cite or mention the MPLA.

"Common-law claims against manufacturers for product-based harms are no longer legally cognizable." *Jackson v. Monsanto Co.*, 2018 WL 3995799, at *2 (S.D. Miss. Aug. 16, 2018) (citation omitted). That's why courts in this District have dismissed them. *See e.g., id.* ("Because these claims are covered by the MPLA, they are not cognizable outside of it. To avoid dismissal, [plaintiff] must recast his common-law claims as MPLA claims."); *Arnoult v. CL Med. SARL*, 2015 WL 5554301, at **3–4 (S.D. Miss. Sept. 21, 2015).

The Court should do the same here.

## II. Plaintiff has not plausibly alleged any claim that the MPLA recognizes.

In any event, the Complaint's factual allegations do not state a plausible claim to relief under the MPLA. Plaintiff alleges only the following relevant *facts*:

- Globus designed, manufactured, and sold the EGPS device that Dr. Walsh used during his surgery. [Doc. 1] ¶¶ 16, 37.

- Dr. Walsh's operative report noted no "complications or problems during surgery." *Id.* ¶ 19.

- After surgery, Dr. Walsh told Plaintiff that the EGPS device "rediagrammed itself" twice during surgery, causing her to misplace two screws. She repositioned one of the screws but left the other; Plaintiff was injured as a result. *Id.* ¶¶ 21, 23, 26, 27, 29, 33.

These bare-boned allegations do not state a plausible claim under any of the MPLA's theories. And the rest of the Complaint, which amounts to a collection of "conclusory statements" and "[t]hreadbare recital[s] of the elements" of every theory under the MPLA, *Iqbal*, 556 U.S. at 678, does not move the needle. *See* [Doc. 1] ¶¶ 37–42.

Plaintiff should not be permitted to move forward with his claims on the mere possibility that some facts *might* exist that *might* support liability on one of the numerous possible theories he has put forward in his Complaint.[2] The Complaint must be dismissed.

## A. Plaintiff has not plausibly alleged that the EGPS device materially deviated from specifications or like units.

A "manufacturing defect claim[] involve[s] allegations not that the entire product line in question was defectively designed, but rather that the specific product

---

[2] Plaintiff will undoubtedly argue that discovery is needed to unearth facts that might support his claims. But the federal pleading standard "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79. A court "cannot excuse failure to plead facts relating to a necessary element of a claim on the ground that discovery will reveal those necessary facts." *TEU Servs., Inc. v. Inventronics USA, Inc.*, 2018 WL 3338217, at *10 (W.D. Tex. Feb. 5, 2018). Indeed, a plaintiff "is not entitled to discovery to try to find facts to support conclusory statements in his pleadings." *Blue Star Press, LLC v. Blasko*, 2018 WL 1904835, at *5 n.6 (W.D. Tex. Mar. 6, 2018). A plaintiff thus "may not survive a Rule 12(b)(6) motion to dismiss simply by contending that further discovery is needed" to state a viable claim. *Herbert v. Citimortgage, Inc.*, 2020 WL 13441542, at *3 (S.D. Miss. Dec. 10, 2020).

purchased by the consumer was manufactured in a way which deviated from the design specifications." *Hickory Springs Mfg. Co. v. Star Pipe Prods., Ltd.*, 991 F. Supp. 2d 778, 780 (N.D. Miss. 2014). "To state a claim that a product was defectively manufactured, plaintiffs must allege that the product 'deviated in a material way from the manufacturer's specifications or from otherwise identical units manufactured to the same manufacturing specifications.'" *Davis v. Cloplay Corp.*, 2019 WL 1231685, at *3 (S.D. Miss. Mar. 15, 2019) (quoting *Deese*, 2012 WL 463722, at *3).

Plaintiff cannot meet these requirements without alleging "*how* the subject product(s) deviated from the manufacturers' specifications or other units." *Taylor*, 2019 WL 6617404, at *2 (emphasis added) (internal quotation marks and citations omitted); *accord Gulfstream Prop. & Cas. Ins. Co. v. Alarm.com, Inc.*, 2022 WL 1541290, at *5 (S.D. Miss. May 16, 2022) (dismissing manufacturing defect claim where plaintiff failed to allege "specifications [or] any deviation therefrom" and noting that the complaint "is silent regarding product specifications"). The Complaint fails to do so.

Indeed, the only *fact* Plaintiff alleges about *this* device is that it "rediagrammed itself" during surgery. But he does not elaborate, nor do his vague assertions connect the concept to his conclusion that the device malfunctioned. Even if the Court accepted that conclusion,[3] "[p]roof of malfunction" alone does not create a manufacturing-defect claim. *Estes v. Lanx, Inc.*, 2015 WL 9462964, at *4 (N.D. Miss.

---

[3] And it should not, because the Complaint lacks any facts to draw it.

Dec. 23, 2015) (citing *Shelter Ins. Co. v. Mercedes-Benz USA, LLC*, 236 F. App'x 45, 47–48 (5th Cir. 2007)); *cf. Casey v. Toyota Motor Eng'g & Mfg. N. Am., Inc.*, 770 F.3d 322, 327–28 (5th Cir. 2014) (explaining how, under Texas's similar products-liability statute, speculation that a defect existed cannot be based on product failure alone).

Plaintiff does not allege what the EGPS device's specifications are, how the device used in his surgery was manufactured in a way that deviated from those specifications, or how this device was different than other units in the same product line. In short, the Complaint "does not allege how [*this* device] deviated from [Globus's] specifications or from other [EGPS devices] it manufactured." *Davis*, 2019 WL 1231685, at *3. It simply concludes that it does. [Doc. 1] ¶ 40(a). For that reason, it should be dismissed. *See, e.g., Funk v. Stryker Corp.*, 631 F.3d 777, 782 (5th Cir. 2011) (affirming dismissal of complaint alleging hip implant had manufacturing defect because allegations were "impermissibly conclusory and vague"); *Taylor*, 2019 WL 6617404, at *2; *Deese*, 2012 WL 463722, at *3; *Gulfstream Prop. & Cas. Ins. Co.*, 2022 WL 1541290, at *5; *Adams v. Energizer Holdings, Inc.*, 2013 WL 1791373, at *3 (S.D. Miss. Apr. 19, 2013).

**B.    Plaintiff offers no factual support for his failure-to-warn claim.**

In general, to state a claim under the MPLA for failure to warn, a plaintiff must plausibly allege that (1) "the product 'failed to contain adequate warnings'"; (2) "the inadequate warnings 'rendered the product unreasonably dangerous to the user or consumer'"; and (3) "the inadequate warning 'proximately caused the damages for which recovery is sought.'" *Union Carbide Corp. v. Nix*, 142 So. 3d 374, 385 (Miss. 2014) (quoting Miss. Code Ann. § 11-1-63(a)(i)-(iii)). In addition, a plaintiff must show

9

that "at the time the product left the control of the manufacturer, designer or seller, the manufacturer, designer or seller knew or in light of reasonably available knowledge should have known about the danger . . . and that the ordinary user or consumer would not realize its dangerous condition." Miss. Code Ann § 11-1-63(c)(i).

Further, "in cases involving medical devices, . . . which are available only through physicians, the duty to warn extends only to the 'learned intermediary,' i.e., the physician." *Nelson v. C.R. Bard, Inc.*, 553 F. Supp. 3d 343, 351 (S.D. Miss. 2021), *aff'd*, 44 F.4th 277, 282 (5th Cir. 2022). In this context, courts ask "whether the warnings . . . g[iven] to the learned intermediary . . . were enough to warn him of the possible complications" involved with using the device. *Lim v. Ethicon, Inc.*, 519 F. Supp. 3d 380, 387 (S.D. Miss. 2021) (citing *Wyeth Labs., Inc. v. Fortenberry*, 530 So. 2d 688, 691 (Miss. 1988)). That analysis must "tak[e] into account the characteristics of, and the ordinary knowledge common to, a physician or other licensed professional who prescribed the . . . device." Miss. Code Ann. § 11-1-63(c)(ii). Similarly, the manufacturer of the medical device cannot be liable "if the danger posed by the product is known or is open and obvious to the [physician], or *should have been* known or open and obvious to the [physician]." *Id.* § 11-1-63(e) (emphasis added). This analysis, like the one required to gauge the adequacy of the warnings, must "tak[e] into account the characteristics of, and the ordinary knowledge common to, the persons who ordinarily use . . . the product." *Id.*

Notwithstanding the above, a plaintiff fails to state a claim if he does not plead facts showing that "the treating physician, or a reasonable physician in the treating

10

physician's position, would not have used the product had he received an adequate warning." *Little v. Smith & Nephew, Inc.*, 2015 WL 3651769, at *9 (N.D. Miss. June 11, 2015) (quoting *Smith v. Johnson & Johnson, Inc.*, 483 F. App'x 909, 914 (5th Cir. 2012)).

The Complaint fails to meet these pleading requirements. So the Court "must dismiss" it. *Amin*, 66 F.4th at 572.

***First***, the Complaint presents a conclusion—the device "failed to contain adequate warnings or instructions"—with no facts to support it. [Doc. 1] ¶ 40(b). Indeed, Plaintiff pleads *zero* facts about the warnings given (or not given) to the hospital and/or Dr. Walsh about the EGPS device. His failure to do so leaves Globus and the Court without a yardstick to measure the adequacy of any warnings provided. *See Nelson*, 44 F.4th at 282 ("[A] warning may be held adequate as a matter of law where the adverse effect was one that the manufacturer specifically warned against.").

Similarly, Plaintiff offers no explanation for what he means when he says that the device "rediagrammed" itself. So even equipped with the warnings and instructions provided, the Court and Globus would have no way to judge whether they "were enough to warn [Dr. Walsh] of the possible complications." *Lim*, 519 F. Supp. 3d at 387.

***Second***, Plaintiff fails to allege that Dr. Walsh, or "a reasonable physician in [her] position, would not have used the [EGPS device] if [s]he had received an adequate warning." *Little*, 2015 WL 3651769, at *9.

As he acknowledges, the EGPS device serves as an "aid" for aligning and navigating surgical screws, provided that locational accuracy can be verified with other imaging devices. *See* [Doc. 1] ¶ 17. But he does not allege that Dr. Walsh or any other reasonable surgeon would not use this aid if she knew that she would still need to use, at all points in the operation, other available devices to ensure the accurate insertion of surgical screws.[4] To the contrary, he alleges that Dr. Walsh was "negligent" and committed medical malpractice by "misplacing the . . . pedicle screws during surgery." *Id.* ¶ 35.

For these reasons, the Complaint fails to plausibly allege causation. *See Little*, 2015 WL 3651769, at *9 (dismissing complaint that "fail[ed] to allege that the physician would not have used the [product] if he had received an adequate warning"); *Deese*, 2012 WL 463722, at *5 (dismissing failure to warn claim where complaint fell "short of alleging that an adequate warning would have kept [the] physician from prescribing [the drug]").

## C.    Plaintiff has not plausibly alleged a claim for design defect.

To state a plausible design-defect claim, a plaintiff must plead facts that satisfy the following four elements:

> (1) The danger presented by the product's design was known or should have been known to the manufacturer (i.e., the danger was foreseeable); (2) the product failed to function as expected (as a result of a design characteristic); (3) an alternative design existed that would not impair the product's usefulness or desirability; and (4) the alternative design would have to a reasonable probability prevented the harm.

---

[4] The need to rely on all available tools to ensure locational accuracy of surgical screws surely falls within the "ordinary knowledge common to" neurosurgeons like Dr. Walsh. Miss. Code Ann. §§ 11-1-61(c)(ii), (e).

*Phillips 66 Co. v. Lofton*, 94 So. 3d 1051, 1060 (Miss. 2012) (quoting *Williams v. Bennett*, 921 So. 2d 1269, 1274 (Miss. 2006)); *see also* Miss. Code Ann. § 11-1-63(a)(i)(3), (ii), (iii), (b), (f).

Plaintiff alleges that the EGPS device was "designed in a defective manner" and "failed to function as expected". [Doc. 1] ¶¶ 40(c), (c)(ii). He surmises that a "feasible design alternative" existed—one that "would have to a reasonable probability prevented [his] harm" without "impairing the utility, usefulness, practicality or desirability" of the device. *Id.* But his Complaint lacks facts to support those conclusions.

***First***, Plaintiff does not "allege what was defective about [the EGPS device's] design." *Deese*, 2012 WL 463722, at *3. He alleges only that the device "rediagrammed itself," which he calls a "malfunction", and that the device "causes surgeons . . . to misplace surgical screws." [Doc. 1] ¶¶ 29, 39. But again, he does not elaborate on this concept or provide facts connecting it to his conclusion that the device was defectively designed. *See supra*, at 8, 11. His allegations amount to "something went wrong with the device, so it must be defectively designed."

This Court and others in this District have dismissed design-defect claims of a similar ilk. *See, e.g., Riddell v. Howmedia Osteonics*, No. 3:14-cv-705-DPJ-FKB, 2015 WL 5167039, at *7 (S.D. Miss. Sept. 3, 2015); *Deese*, 2012 WL 463722, at *3; *Davis*, 2019 WL 1231685, at *3; *Mullen v. Bell Helicopter Textron, Inc.*, 2015 WL 11120331, at *2 (S.D. Miss. Aug. 17, 2015); *Austin v. Bayer Pharms. Corp.*, 2013 WL 5406589, at *6 (S.D. Miss. Sept. 25, 2013). This Complaint warrants the same result.

***Second***, even if Plaintiff's scant allegations were enough to support a defect in design, the Complaint fails to plausibly allege the existence of a feasible alternative design. Instead, it baldly concludes that one exists. [Doc. 1] ¶ 40(c)(ii). But "Rule 8 requires more than a bare assertion that safer alternative products exist." *Young v. Bristol-Myers Squibb Co.*, 2017 WL 706320, at *9 (N.D. Miss. Feb. 22, 2017). This shortcoming alone warrants dismissal of the claim. *See Davis*, 2019 WL 1231685, at *3 (dismissing complaint that did not "allege the existence of any feasible design alternative"); *Adams*, 2013 WL 1791373, at *2 (dismissing claim where plaintiffs had "not alleged that a feasible alternative design existed").

Consistent with *Davis* and *Adams*, courts in this Circuit routinely dismiss complaints that include only bare allegations of an alternative design.[5] *See, e.g.*, *Dubroc v. Bristol-Myers Squibb*, 2019 WL 3756469, at *4 (M.D. La. Aug. 8, 2019) (dismissing design defect claim as conclusory where plaintiff alleged only "an alternative design for the product that was capable of preventing Plaintiff's damages with use of other materials that did not [experience the same alleged adverse event]"); *Cole v. C.R. Bard, Inc.*, 2021 WL 784661, at *3 (S.D. Tex. Feb. 11, 2021) (dismissing complaint that lacked "specific factual allegations describing the purported safer alternative design"); *Franklin v. Apple, Inc.*, 569 F. Supp. 3d 465, 478 (E.D. Tex. 2021) (holding that complaint "fail[ed] to identify any alternative design—much less how

---

[5] "In federal court, the sufficiency of the pleadings is determined by federal procedure." *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 155 (5th Cir. 2010). Although these cases did not involve Mississippi substantive law, each case decided whether the plaintiffs plausibly alleged an alternative design under federal pleading standards.

14

the design is in fact feasible or safer" and thus "contain[ed] no *facts* regarding an alternative design") (emphasis in original).

This case is no different. Plaintiff has failed to allege specific facts about a feasible alternative design, so he has not plausibly alleged a design-defect claim under the MPLA.

> **D.    Plaintiff has not plausibly alleged a breach of an express warranty or a failure to conform to express factual representations.**

Under the MPLA, this claim requires facts showing that, "at the time" the EGPS device left Globus's control, "[t]he product breached an express warranty or failed to conform to other factual representations upon which [Plaintiff] justifiably relied in electing to use the product[.]" Miss. Code Ann. § 11-1-63(a)(i)(4). "[A]n express warranty is any affirmation of fact or promise which concerns the product and becomes part of the basis for the purchase of such a product." *Scirocco v. Ford Motor Co.*, 2015 WL 2451225, at *4 (S.D. Miss. May 21, 2015) (quoting *Forbes v. GMC*, 935 So. 2d 869, 876 (Miss. 2006)).

Plaintiff alleges the EGPS device "breached an express warranty or failed to conform to other express factual representations upon which [he] and/or Dr. Walsh justifiably relied in electing to use the product, specifically including . . . representations that the EGPS device was sufficiently capable of aiding surgeons in the placement of surgical screws . . . and otherwise guiding surgical instruments." [Doc. 1] ¶ 40(d). Further, though lumped into the allegations under his implied warranty claim, he alleges that Globus "warranted . . . expressly . . . through written materials, advertisements, and sales representatives, that the EGPS device was of

15

merchantable quality and fit for the ordinary purpose for which it was intended and distributed." *Id.* ¶ 43.

These allegations parallel those in *Deese*, where this Court dismissed a claim that did little more than allege that defendants warranted and represented that a product was "reasonably safe" for treating a particular disease. 2012 WL 463722, at *6. The Court noted the complaint "fail[ed] to identify . . . any express warranty or express factual representation made by [d]efendants that they allegedly breached." *Id.* So the Court concluded that it "does not allege enough facts to state a claim to relief that is plausible on its face and should be dismissed with prejudice." *Id.* (citing *Iqbal* and *Twombly*); *see also Riddell*, 2015 WL 5167039, at *8 (dismissing claim where plaintiff alleged that the product "failed to do what [defendant] stated it would do on its packaging and labeling, among other things"); *Wildman v. Medtronic, Inc.*, 874 F. 3d 862, 870 (5th Cir. 2017) (collecting cases) ("[I]n medical device cases . . . unsuccessful plaintiffs have asserted vague allegations about representations the device manufacturer made to doctors or consumers.").

Plaintiff's express warranty claim fares no better. It should be dismissed.

### E.    Plaintiff's implied warranty claim parrots his already-pleaded products liability claims.

Implied warranty claims that are "duplicative of already-pleaded products liability claims . . . should be dismissed." *Taylor*, 2019 WL 6617404, at *3 (quotation omitted). In this regard, Plaintiff's implied warranty claim and the one in *Taylor* are identical. *Compare id.* at **3–4, *with* [Doc. 1] ¶¶ 43–49; *cf. Sunshine Mills, Inc. v. Nutra-Blend, LLC*, 417 So. 3d 133, 140–142 (Miss. 2025) (offering example of an

16

implied warranty claim that is not subsumed by the MPLA). Because Plaintiff's implied warranty claim is "'based on the same theory of recovery' as his products-liability claims, 'the proper course is to dismiss the [implied-warranty] claim[] to the extent'" it is "duplicative of the parallel products liability counts." *Taylor*, 2019 WL 6617404, at \*4 (brackets in original) (quoting *Young*, 2017 WL 706320, at \*4); *accord Patten v. Matco Tools Corp.*, 2024 WL 3184640, at \*2 (S.D. Miss. June 26, 2024).

Even if this were not the case, Plaintiff's claim for breach of the implied warranty of fitness for a particular purpose fails for two reasons. First, the EGPS device was "used for its ordinary purpose." *Little*, 2015 WL 3651769, at \*12 (quotation omitted). Second, Plaintiff never alleges he relied on Globus in choosing to undergo a surgery in which the EGPS device would be used. To the contrary, the Complaint shows "he relied solely on his treating physician Dr. [Walsh] to make that decision." *Estes*, 2015 WL 9462964, at \*9.

The Court should dismiss Plaintiff's implied warranty claim.

## F. The FDA letter attached to the Complaint does not salvage Plaintiff's claims.

The FDA letter attached to the Complaint, [Doc. 1-4], does nothing to cure the pleading defects detailed above. Glaringly, Plaintiff references it only twice in his Complaint: once to describe the nature of the EGPS device, [Doc. 1] ¶ 17, and once to support his conjecture that Globus knew the device had a "defect" that rendered it "unreasonably dangerous," *id.* ¶ 39. Plaintiff does not attempt to tie the contents of the letter to the facts in his Complaint because the contents of the letter do not lend support to Plaintiff's claims about the EGPS device used in his surgery.

To be sure, the letter identifies alleged deficiencies in Globus's internal procedures, complaint-handling practices, and medical device reporting ("MDR"). *See* [Doc. 1-4]. But it does not point to any defect in the design of the EGPS device. Nor does it point to any shortcomings in the warnings provided to purchasers. Nor does it show that *this* device, the one used in Plaintiff's surgery, deviated in a material way from design specifications or from otherwise identical units. All told, it does nothing to explain "what went wrong in the manufacturing process." *Riddell*, 2015 WL 5167039, at *6 (quoting *Bass,* 669 F.3d at 511).

Yet Plaintiff gestures toward the letter as if regulatory observations about Globus's internal quality-system process somehow establish that the EGPS device used in his surgery was defectively designed, defectively manufactured, or otherwise unreasonably dangerous when it left Globus's control. Nothing in the letter supports those propositions. The FDA's findings are expressly about procedural compliance— how Globus investigated complaints, documented those investigations, and submitted MDRs. In other words, the letter does not accuse Globus of manufacturing a defective product; it accuses Globus of failing to take all the necessary steps that federal regulations require to determine whether any given EGPS device has a problem and to communicate the findings of those investigations to the FDA.

Plaintiff's attempt to transform those administrative-compliance critiques into factual support for a defect in this device is a classic non-sequitur. And the words "Warning Letter" are not a band-aid for scant pleadings. This Court requires more. *See Riddell*, 2015 WL 5167039, at **3–6. The Complaint should be dismissed.

## CONCLUSION

Plaintiff's Complaint is short on facts and long on conclusions. It falls short of the federal pleading standard and should be dismissed.

**RESPECTFULLY SUBMITTED**, this the 30th day of January 2026.

/s/ *P. Garner Vance*
Michael C. Williams (MSB 104537)
P. Garner Vance (MSB 106706)
R. Craig Mayfield (Admitted *Pro Hac Vice*)
BRADLEY ARANT BOULT CUMMINGS LLP
One Jackson Place
188 East Capitol Street, Suite 1000
Jackson, MS 39201
Telephone: (601) 948-8000
E-mail: mcwilliams@bradley.com
E-mail: gvance@bradley.com
E-mail: cmayfield@bradley.com

*Counsel for Defendants Globus Medical, Inc. and Globus Medical North America, Inc.*

19

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a true and correct copy of the above and foregoing document via the Court's CM/ECF filing system, which sends notification of such filing to all counsel of record.

THIS, 30th day of January 2026.

/s/ P. Garner Vance
P. Garner Vance