**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

| | | |
|---|---|---|
| **MAXWELL D. NALDER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **VERSUS** | ) | **CIVIL ACTION NO. 3:25-CV-933-DPJ-ASH** |
| | ) | |
| | ) | |
| **KELSEY A. WALSH, M.D.,** | ) | |
| **GLOBUS MEDICAL, INC. and** | ) | |
| **GLOBUS MEDICAL NORTH** | ) | |
| **AMERICA, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS, GLOBUS MEDICAL, INC. and GLOBUS MEDICAL NORTH AMERICA, INC.'S, MOTION TO DISMISS**

COMES NOW, Plaintiff, Maxwell D. Nalder ("Plaintiff"), who files his Memorandum in Support of Plaintiff's Opposition to the Motion to Dismiss filed by Globus Medical, Inc. and Globus Medical North America, Inc. (hereafter, "Globus"). For the reasons set forth below, Globus' Motion to Dismiss should be denied.

### I.     INTRODUCTION

The Plaintiff, Maxwell Nalder, underwent spinal surgery in January 2025. He was admitted to the hospital and Defendant, Kelsey Walsh, M.D. took him to the operating room. He was placed under general anesthesia. Upon awakening from surgery, Dr. Walsh noted that Mr. Nalder exhibited neurological deficits that had not been present prior to surgery. She also advised Mr. Nalder that the Globus surgical robot that she had used during surgery had malfunctioned causing her to drill his spine in incorrect locations and place screws in the wrong place. To this day, Mr. Nalder suffers severe neurological deficits resulting directly from the negligence of Dr. Walsh and the defective Globus surgical robot.

### II.     BACKGROUND

In 2024, Mr. Nalder began experiencing back pain which was radiating down his left leg (Doc. 1, ¶ 9). At the time, Mr. Nalder was independent, employed, able to walk without a cane or walker and otherwise able to care for himself (Doc. 1, ¶ 10). On December 18, 2024, Mr. Nalder

presented to NewSouth NeuroSpine where he was seen by Dr. Kelsey A. Walsh (Doc. 1, ¶ 11). Dr. Walsh noted that Mr. Nalder's back pain had recently worsened during a period when he was caring for his terminally ill wife, and that because his pain was limiting his ability to be active, he was ready to undergo surgery (Doc. 1, ¶ 12).

Dr. Walsh diagnosed Mr. Nalder with L4/5 spondylolisthesis with stenosis, and L5/S1 degenerative disk disease and stenosis (Doc. 1, ¶ 15). She recommended that he undergo minimally invasive left-sided L4-5 and L5-S1 transforaminal lumbar interbody fusion ("TLIF"). (Doc. 1, ¶ 13). On January 16, 2025, Dr. Walsh admitted Mr. Nalder to Merit Health River Oaks for surgery (Doc. 1, ¶ 14).

During surgery, Dr. Walsh utilized a Globus Excelsius GPS ("EGPS") surgical robot, a device manufactured by Defendants Globus Medical, Inc. and/or Globus Medical North America, Inc. (Doc. 1, ¶ 16). According to an FDA Warning letter to the Globus dated July 15, 2024, a copy of which is attached hereto and to Complaint as Exhibit "C", the EGPS device and associated interbody spine and cranial modules is "intended for use as an aid for precisely locating anatomical structures and for the spatial positioning and orientation of an instrument holder or guide tube to be used by surgeons for navigating and/or guiding compatible surgical instruments in open or percutaneous procedures provided that the required fiducial markers and rigid patient anatomy can be identified on CT scans or fluoroscopy" (Doc. 1, ¶ 17).  In her operative report, Dr. Walsh noted that she used the EGPS device to place pedicle screws at L4, L5 and S1 on Mr. Nalder's right and left sides (Doc. 1, ¶ 18). After surgery, Dr. Walsh noted that Mr. Nalder was extubated and transferred to recovery in stable condition (Doc. 1, ¶ 20).

When Mr. Nalder woke up in recovery, both Dr. Walsh and a nurse were at his bedside (Doc. 1, ¶ 21). Dr. Walsh advised Mr. Nalder that the "robotic arm had malfunctioned and that the L5 right pedicle screw was drilled in the wrong location" (Doc. 1, ¶ 21). Dr. Walsh evaluated Mr. Nalder's neurological function in both his left and right feet. Mr. Nalder's left foot was fine, but his right foot was weak and without flexion (Doc. 1, ¶ 22).  Dr. Walsh advised Mr. Nalder that this was her primary concern and that he would be assessed again before discharge (Doc. 1, ¶ 22).

On January 17, 2025, Dr. Walsh evaluated Mr. Nalder and again commented that the EGPS had malfunctioned during surgery (Doc. 1, ¶ 23). She evaluated the neurological function in Mr.

Nalder's feet. Again, his left foot was fine, but he was only slightly able to lift his right toes off of the floor and could not move his right foot at all (Doc. 1, ¶ 23).

On January 23, 2025, approximately two weeks after surgery, Mr. Nalder called Dr. Walsh's office with complaints of right hip pain and extreme fatigue in his right hip, leg and foot (Doc. 1, ¶ 24). He was advised to see a hip specialist and ultimately saw a physician at Mississippi Sports Medicine who determined that Mr. Nalder had no problem with his hip and prescribed physical therapy (Doc. 1, ¶ 25).

On February 14, 2025, Mr. Nalder was again seen by Dr. Walsh who evaluated Mr. Nalder's neurological function noting the same deficits as before (Doc. 1, ¶ 26). Dr. Walsh again commented that the EGPS had malfunctioned and that the L5 right pedicle screw had been drilled and placed "lower" than she intended (Doc. 1, ¶ 26). On March 11, 2025, Dr. Walsh again evaluated Mr. Nalder's neurological function noting the same deficits as before. Dr. Walsh again commented that the EGPS had malfunctioned (Doc. 1, ¶ 27).

On April 10, 2025, Dr. Walsh evaluated Mr. Nalder for the last time, as she was moving to North Carolina (Doc. 1, ¶ 28). Mr. Nalder indicated that his right foot, leg and hip were essentially useless despite the fact that he had been undergoing physical therapy for quite some time. He further indicated that he had begun experiencing sharp, stabbing pain in his right lumbosacral area that would come and go (Doc. 1, ¶ 28).

Mr. Nalder asked Dr. Walsh about the EGPS so that he could better understand how it had allegedly malfunctioned (Doc. 1, ¶29). Dr. Walsh explained to him the process of how "diagramming" worked and indicated to him that during surgery the EGPS "rediagrammed" itself on Mr. Nalder's L4 vertebrae causing her to first misplace the screw and then to have to reposition it intraoperatively (Doc. 1, ¶ 29). She then went on to explain that the EGPS "rediagrammed" itself again on Mr. Nalder's right side causing her to misplace the L5 pedicle screw lower than she intended (Doc. 1, ¶ 29).

After Dr. Walsh moved to North Carolina, Mr. Nalder's care was assumed by Dr. Jack Moriarity (Doc. 1, ¶ 30). On June 3, 2025, Mr. Nalder was seen by Dr. Moriarity who confirmed that Mr. Nalder's right lower extremity neurological deficits persisted (Doc. 1, ¶ 31). Additionally, Dr. Moriarity confirmed that initially Dr. Walsh had placed the right L4 screw "too medial" and that it was repositioned during surgery (Doc. 1, ¶ 32). He also confirmed that Dr. Walsh had

"inferiorly positioned" the right L5 screw and that it remained in such position (Doc. 1, ¶ 32). Dr. Moriarity suggested that Mr. Nalder undergo surgery to remove the right L5 screw (Doc. 1, ¶ 32). Finally, Dr. Moriarity concluded that the weakness and other neurological deficits Mr. Nalder was experiencing likely resulted from the mispositioned right L4 screw that had been repositioned by Dr. Walsh during surgery (Doc. 1, ¶ 33).

### III.    LEGAL STANDARD

#### a.  Rule 12(b)(6) Motion to Dismiss

Motions to dismiss predicated on a failure to state a claim upon which relief can be granted are based upon Federal Rule of Civil Procedure 12(b)(6). "Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." *Patten v Matco Tools Corp.*, 24-83, 2024 WL 3184640, at *1 (S.D. Miss. June 26, 2024) (citation omitted); *see also*, *Gulfstream Prop. and Cas. Ins. Co. v. Alarm.com, Inc.*, No. 21-52, 2022 WL 1541290, at *5 (S.D. Miss. May 16, 2022) (citing *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009)).

The plaintiff's complaint need only be "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Proc. 8(a)(2). When ruling on a motion to dismiss under Rule 12(b)(6), "the allegations in the complaint must be taken as true and the motion should not be granted unless it appears beyond reasonable doubt that the plaintiff will be unable to prove any set of facts in support of her claim." *State v Bayer Corp.*, 32 So. 3d 496, 502 (Miss. 2010) (quoting *Howard v. Estate of Harper ex rel. Harper,* 947 So.2d 854, 856 (Miss.2006) (citing *Liggans v. Coahoma Sheriff's Dep't,* 823 So.2d 1152, 1154 (Miss. 2002)).  All reasonable inferences must be drawn in the plaintiff's favor. *See Gulfstream*, 2022 WL 1541290 (citing *Martin K. Eby Const. Co. v Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)) and the complaint should be "liberally construed" in the plaintiff's favor." *Adams v. Energizer Holdings, Inc.*, 12-797, 2013 WL 1791373, at *1 (S.D. Miss. Apr. 19, 2013) (citing *True v. Robles*, 571 F.3d 412, 417 (5th Cir. 2009)).

"[D]etailed factual allegations" are **not** required and the motion to dismiss should be denied when the plaintiff pleads sufficient factual content to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937 (2009) (quoting *Bell Atlantic Corp. v Twombly,* 550 U.S. 554, 556, 127 S.Ct. 1955 (2007)) (emphasis added). In considering a motion to dismiss under Rule 12(b)(6), the "court

may not go outside the complaint, but may consider documents attached to the complaint. *Walker v. Webco Indus., Inc.,* 562 F. App'x 215, 216–17 (5th Cir.2014) (per curiam) (citing *Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 839 (5th Cir. 2004). While "threadbare recitals of a cause of action's elements, supported by mere conclusory statements," is not enough, whether a complaint is plausible on its face is "context specific, requiring the reviewing court to draw on its experience and common sense." *Iqbal,* 556 U.S. at 663-64, 129 S.Ct. 1937 (citing *Twombly,* 550 U.S. at 555. 127 S.Ct. 1955).

### b.  The Mississippi Products Liability Act

The Mississippi Products Liability Act (MPLA) "applies 'in any action for damages caused by a product,' with deviation defects, warnings or instruction defects, design defects and where a product breached an express warranty." Miss. Code Ann. § 11-1-63. Under Mississippi law, the MPLA is the exclusive remedy for products-liability claims and "the MPLA now provides the roadmap for such claims." *Elliott v El Paso Corp*., 181 So. 3d 263, 268 (Miss. 2015). In general, a claimant in Mississippi must make a prima facie case under MPLA by "showing that a product was defective; that the defect caused the product to be unreasonably dangerous; that the unreasonably dangerous defect caused the harm complained of; and that the defective condition existed at the time the product left the control of the manufacturer or seller." *Williams v. Bennett*, 921 So. 2d 1269, 1273 (Miss. 2006) (citing Miss. Code Ann. Section 11–1–63(a)(I)–(iii)).

### IV.    LAW AND ARGUMENT

Globus asserts in its Motion to Dismiss that this complaint should be dismissed because the Plaintiff does not specifically invoke the MPLA statute by name and supposedly relies on insufficient facts to support his product liability claim. Both of Globus' asserted grounds for dismissal are without merit. As discussed below, Plaintiff is not required to explicitly cite the MPLA to state a claim thereunder. Moreover, contrary to Globus' assertion, Plaintiff's claims rest on multiple facts that impose liability on Globus.

### a.  Plaintiff's Complaint asserts a facially valid MPLA claim and omission of an explicit reference to the MPLA does not warrant dismissal.

Plaintiff is seeking recovery solely under the MPLA.  It is clear from the face of the Complaint that Plaintiff's cause of action against Globus arises under the MPLA because the facts alleged and elements delineated in the Complaint, taken as a whole, make it clear that this is an MPLA claim (Doc. 1). The facts asserted are more than sufficient to fully assert an MPLA claim.

Contrary to Globus' assertion, there is no pleading requirement to explicitly reference the MPLA statute in the complaint. *See Patten v. Matco Tools Corp.,* 2024 WL 3184640, at *1 (S.D Miss. June 26, 2024).  When the allegations, taken as a whole, plainly state the elements of a claim under MPLA and the plaintiff concedes that he seeks relief under the MPLA, it is not necessary that the complaint explicitly cite the MPLA. *Id.*; *see also Knoth v. Apollo Endosurgery U.S., Inc.*, 425 F. Supp. 3d 678, 693 (S.D. Miss. 2019) ("Although Knoth's headings assert that she is pursuing a manufacturing claim under negligence or strict liability, she has pleaded a manufacturing claim as set forth under the MPLA")).

Globus cites *Arnoult v. CL Medical SARL* in an attempt to justify dismissal. *Arnoult* is easily distinguishable. In *Arnoult,* the district court dismissed common law negligence claims pled **with** MPLA claims, finding them redundant. *Arnoult v. CL Medical SARL*, No. 14-271, 2015 WL 5554301, at *3-*4 (S.D. Miss. Sept. 21, 2015).   In contrast here, the Plaintiff's claim is clearly an MPLA claim on its face and there are no redundant common law negligence claims pled. Thus, there is no requirement to explicitly cite the MPLA in a complaint under MPLA where the allegations on the face of the complaint give notice of the nature of the claim. Plaintiff's omission of an explicit reference to the MPLA in the Complaint is not grounds for dismissal.

b.  **This Complaint pleads sufficient facts to support a reasonable inference of Globus' liability for every element of the MPLA.**

To successfully plead a claim under the MPLA, a plaintiff must allege: 1) that the defendant is the manufacturer of the defective product; 2) there exists a deviation from the specifications, design defect, inadequate warning or breach of express warranty existed at the time the product left the manufacturer's control that rendered the product unreasonably dangerous; and 3) this unreasonably dangerous defect or condition was a proximate cause of the Plaintiff's injuries. *See* Miss. Code Ann. Section 11–1–63(a)(I)–(iii). Here, the first element of this standard is not reasonably in dispute; Plaintiff asserts in the Complaint that Globus was "actively engaged in the business of designing, manufacturing, and selling the EGPS surgical robot" including the EGPS device that malfunctioned (Doc. 1, ¶ 37), and Globus admits this in its motion. (Doc. 14, p. 1).

i. **The Complaint and attached FDA letter plead sufficient facts to show an unreasonably dangerous defect existed in Globus' product and that that defect was the proximate cause of the Plaintiff's injuries.**

Globus incorrectly asserts that the Plaintiff's claims rely on conclusory statements and threadbare recital of the elements of the MPLA. Plaintiff's allegations that the Globus EGPS device was defective and unreasonably dangerous and that this unreasonably dangerous defect caused Plaintiff's injuries are supported by five separate statements made by Plaintiff's surgeon, Dr. Kelsey Walsh, to Plaintiff, and the FDA warning letter referenced in, and attached as an exhibit to, the Complaint.[1] When the Plaintiff woke in the recovery room, Dr. Walsh told him the "the robotic arm had malfunctioned and that the L5 right pedicle screw was drilled in the wrong location" (Doc. 1, ¶ 21). On January 17, 2025, Dr. Walsh stated that the EGPS had malfunctioned during surgery (Doc. 1, ¶ 23). On February 14, 2025, she again stated that the EGPS had malfunctioned and that the L5 right pedicle screw had been drilled and placed "lower" than she intended (Doc. 1, ¶ 26). On March 11, 2025 Dr. Walsh again stated that the EGPS had malfunctioned (Doc. 1, ¶ 27) and when Plaintiff asked her to explain the malfunction, she described two errors made by the defective EGPS device. She said that the EGPS "rediagrammed" itself on Plaintiff's L4 vertebrae causing her to first misplace the screw and then reposition it intraoperatively and "rediagrammed" itself again on Plaintiff's right side causing her to misplace the L5 pedicle screw lower than she intended (Doc. 1, ¶ 29). With these statements alone, Plaintiff has asserted sufficient facts to support the existence of a defective and unreasonably dangerous product that caused Plaintiff's injuries, facially plausible MPLA claim.

Dr. Walsh's statements to Plaintiff are not the only indication that Globus' product was defective. The FDA warning letter sent to Globus and attached to Plaintiff's Complaint repeatedly addresses the existence of an unreasonably dangerous defect in Globus' product. The letter cites Globus for not timely reporting an incident where "a patient's dural lining of the spinal cord was damaged during a procedure with your firm's EGPS spinal robotic system, necessitating surgical intervention and repair" (Doc. 1-4, p. 3). The FDA charged Globus with a violation for prematurely concluding, without a detailed investigation, that there was no device malfunction in a surgery with EGPS in which the patient died. (Doc. 1-4, pp. 2-3). In another incident in which "the screw

---

[1] Fed. R. Civ. P. 10(c) states "Adoption by Reference; Exhibits. A statement in pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion. A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."

missed pedicle which then went superior into the disc space and the screw was removed," the FDA stated that Globus failed to make sufficient attempts to verify whether a malfunction occurred (Doc. 1-4, p. 3). The FDA proceeded to cite Globus for failing to report information "that reasonably suggests that a device that it markets has malfunctioned and this device or a similar device that your firm markets would be likely to cause or contribute to death or serious injury, if the malfunction were to recur" (Doc. 1-4, pp. 3-4). The letter finally states that all the injuries mentioned in their letter "reasonably suggests that [Globus'] firm's EGPS spinal robotic system malfunctioned (i.e. misplaced screws) while in use" (Doc. 1-4, p. 4). The FDA called these incidents "reportable malfunction[s]" that Globus was aware of starting on January 28, 2021, almost four years before Plaintiff's surgery (Doc. 1-4, p. 4). The FDA letter suggests a wealth of evidence exists of a defect in either specific EGPS devices or in all EGPS devices manufactured by Globus; it is not, as Globus contends, simply a letter about the need for correct reporting and corrective action.

As demonstrated above, Plaintiff here is **not** "armed with nothing more than conclusions," as *Iqbal* prohibits and Globus asserts, *Iqbal,* 556 U.S. at 678-79, and has asserted sufficient facts for a facially plausible MPLA claim. The facts asserted above sufficiently support the existence of a manufacturing or design defect in Globus' EGPS device that existed at the time it left Globus' control and that this defect was the cause of Plaintiff's injuries.

### a. The Complaint and attached FDA letter plead sufficient facts to satisfy the elements specific to a manufacturing defect claim.

A manufacturing defect claim, upon evidence that the defect exists, need only put the defendant on notice that the plaintiff is claiming that the product was defectively manufactured at the motion to dismiss stage. *Little v Smith & Nephew, Inc*., No. 15-28, 2015 WL 3651769, at *8 (N.D. Miss. June 11, 2015) (finding plaintiff's simple assertion in the complaint sufficient and that "great detail is not necessary at the motion-to-dismiss stage"). In *Little*, the court denied defendant's motion to dismiss, finding that plaintiff's claim "that the screw was defectively manufactured" was sufficient at pleading. *Id.* Similarly, here, Plaintiff's claim that the EGPS device caused Dr. Walsh to "misplace the surgical screws", (Doc. 1, ¶ 39) is sufficient at pleading to put Globus on notice of Plaintiff's intent to claim a manufacturing defect. It is neither possible nor necessary to describe specifically how this manufacturing defect occurred at this stage of litigation without the benefit of discovery. *See Little*, 2015 WL 3651769.

8

The cases cited in support by Globus are distinguishable from this case. In *Taylor v. Smith & Nephew*, the court granted defendant's motion to dismiss as to plaintiff's manufacturing claim because, after four amendments amid ongoing discovery, the plaintiff's pleading still failed to explain what the defect was or that it was "due to a material deviation 'from the manufacturer's or designer's specifications or from otherwise identical units manufactured to the same manufacturing specifications'" *Taylor v. Smith & Nephew, Inc.*, No. 18-234, 2019 WL 6617404, at *2 (S.D. Miss. Dec. 5, 2019) (quoting Miss. Code Ann §11-1-63(a)(i)(1)). The ongoing discovery and four prior amendments distinguish *Taylor* from the instant case on its face. Additionally, here, Plaintiff's Complaint specifically alleges that the defect is the EGPS device reprogramming or rediagramming itself during Plaintiff's surgery causing Dr. Walsh to misplace surgical screws. (Doc. 1, ¶¶ 29, 39) and explicitly alleges that Globus' EGPS device "deviated in a material way from the Globus' specification or from otherwise identical units manufactured to the same manufacturing specifications." (Doc. 1, ¶ 40(a)).

Globus also incorrectly asserts *Gulfstream Property and Casualty Insurance Company v. Alarm.com* in support of dismissal. In that case, the court dismissed the manufacturing claim because the plaintiff, even after amendment of the petition, had not even mentioned "the specifications or any deviation therefrom" and the court found "no allegations in this amended complaint that convince the court of plaintiff's ability, with discovery, to prove defendant's liability under MPLA." *Gulfstream*, 2022 WL 1541290 at *5-*6. The court could not even tell if plaintiff intended a manufacturing defect claim. *Id*. Here, the Plaintiff's Complaint clearly pleads a manufacturing defect (Doc. 1, ¶ 40(a)) and supports it with the statements of Dr. Walsh (Doc. 1, ¶¶ 21, 23, 26, 27, 29) and the FDA letter. (Doc. 1-4.) With discovery, Plaintiff will be able to question Dr. Walsh under oath as to exactly what she claims occurred, obtain evidence directly from the EGPS device as to what happened and review reports by both Defendants of the facts surrounding the incident. With discovery, Plaintiff will have the ability to prove Globus' liability under MPLA. Such proof is a product of discovery and not a requirement at pleading. Under the standards set in *Taylor* and *Gulfstream,* Globus' motion to dismiss should be denied.

Finally, *Estes v. Lanx*, cited by the Globus in support, is procedurally inapposite here because it involved the grant of a motion for summary judgment **after discovery**, not a motion to dismiss based on the face of the petition alone. *See Estes v. Lanx, Inc.*, No. 14-052, 2015 WL

9462964 (N.D. Miss. Dec. 23, 2015) (emphasis added). Globus has failed to cite any case law that supports dismissal of Plaintiff's manufacturing defect claim.

### b. The Complaint and attached FDA letter plead sufficient facts to satisfy the elements specific to a design defect claim.

All manufacturers have a duty to design reasonably safe products that are free from defects. *See* Miss. Code Ann. § 11–1–63; *Batts v. Tow–Motor Forklift Co.*, 978 F.2d 1386, 1400 (Miss. 1992) (citation omitted). The Mississippi Supreme Court summarized the elements of a design defect as:

> The danger presented by the product's design was known or should have been known to the manufacturer [or seller] (i.e., the danger was foreseeable); (2) the product failed to function as expected (as a result of a design characteristic); (3) an alternative design existed that would not impair the product's usefulness or desirability; and (4) the alternative design would have to a reasonable probability prevented the harm. *Phillips 66 Co.*, 94 So.3d at 1060 (quoting *Williams v. Bennett,* 921 So.2d 1269, 1274 (Miss.2006) (internal quotation marks omitted)).

In the FDA letter attached to the Complaint, Plaintiff has provided sufficient facts to show that Globus knew or should have known that its EGPS device was causing the misplacement of screws by surgeons, that this was a foreseeable problem and that the EGPS device failed to function as expected because of a design defect as discussed extensively above.

Globus cites *Deese v. Immunex Corporation* in support of its contention that these elements are not met. *Deese* is a pharmaceutical product liability case where the plaintiff fails to "offer any factual support" for his allegations and "fails to allege how Enbrel [the drug] 'deviated in a material way' from manufacturer's specifications or from other units.'" *Deese v. Immunex Corp.*, No. 11-373, 2012 WL 463722, p. *3 (S.D. Miss. Feb. 13, 2012). Here, Plaintiff provides factual support for a design defect. (Doc. 1, ¶¶ 21, 23, 26, 27; Doc. 1-4). Because the EGPS device is specifically designed to precisely locate screws during surgery (Doc. 14), the misplacement of screws during surgery is a sufficient allegation at the pleading stage to demonstrate that the product is defectively designed.

Globus also lists four other cases in support of its motion that it asserts are of the "same ilk" as the instant case. These four cases are also distinguishable. In *Riddell v. Howmedia Osteonics*, the court dismissed plaintiff's design defect claim when the complaint only mentioned it in passing in the complaint and there was no separate section discussing a design defect as there was for manufacturing defect and marketing defect. *Riddell v. Howmedia Osteonics,* 2015 WL 5167039, p. *7 (S.D. Miss., Sept. 3, 2015). In contrast here, the Plaintiff has specifically pled a

design defect (Doc. 1 ¶ 40(c)). In *Davis v. Cloplay Corporation*, the court dismissed the design defect claim when the plaintiff did not "even suggest the nature of the defect" or "allege the existence of any feasible design alternative." *Davis v. Cloplay, Corp.*, 20156 WL 1231685, p *3 (S.D. Miss. Mar. 15, 2019). Here, the Plaintiff has clearly alleged a specific defect, that the EGPS' spontaneously reprogrammed or rediagrammed itself outside of that done by the surgeon causing the misplacement of screws during surgery. (Doc. 1, ¶ 29). In *Mullen v. Bell Helicopter Textron*, the court dismissed the complaint on finding that the plaintiff did not allege a failure in the design of the helicopter, but rather that the helicopter lost power and crashed. *Mullen v. Bell Helicopter Textron, Inc.*, No. 15-58, 2015 WL 11120331, p. *2 (S.D. Miss. Aug. 17, 20915). The court found that accepting the allegations pled as true as required, would not provide the plaintiff with a design defect cause of action. *Id*. Here, the Plaintiff specifically pled a design defect (Doc. 1, ¶ 40(c)) and the court's finding in *Mullen* is inapplicable. None of the above cases cited by Globus support dismissal of Plaintiff's design defect claim.

Plaintiff alleges in his Complaint that an alternative design exists, (Doc. 1, ¶ 40(c)(ii.)), and the FDA letter makes it clear that such an alternative design exists. (Doc. 1-4, p. 2). The Complaint states "there existed a feasible design alternative that would have to a reasonable probability prevented the harm and injury suffered by Mr. Nalder, and which would have to a reasonable probability prevented the harm without impairing utility, usefulness, practicality or desirability of the EGPS device to user or consumers." (Doc. 1, ¶ 40(c)(ii.)) The FDA letter states that Globus has not implemented "corrective and preventive" actions that could correct and prevent the defective placement of screws by Globus' EGPS device. (Doc. 1-4, p. 2), making it clear that with corrective action an alternative design that would have prevented Plaintiff's injuries exists.

Globus cites *Davis v. Cloplay Corporation* and *Adams v. Energizer Holdings* in support of its contention that Plaintiff has not pled a feasible alternative design. In both of these cases, the courts find the plaintiffs did not even allege that a feasible design existed. *Davis*, 2019 WL 1231685, at *3; *See Adams*, 2013 WL1791373. In contrast, here, the Plaintiff's Complaint not only alleges a feasible alternative design but supports that allegation with the FDA letter as delineated above.

11

ii.     **The Complaint and FDA letter plead sufficient facts that Globus failed to warn Dr. Walsh and Plaintiff of the unreasonably dangerous defect in its EGPS device.**

A manufacturer is liable under a failure-to-warn theory if the product "failed to contain adequate warnings," the inadequate warnings "rendered the product unreasonably dangerous to the user or consumer," and the inadequate warning "proximately caused the damages for which recovery is sought." *Union Carbide Corp. v. Nix,* 142 So. 3d 374, 389 (Miss. 2014) (quoting Miss. Code Ann. § 11–1–63(a)(i)–(iii) (Rev. 2004). Plaintiff must prove by a preponderance of the evidence that the manufacturer "knew or in light of reasonably available knowledge should have known about the danger that caused the damage for which recovery is sought and that the ordinary user or consumer would not realize its dangerous condition." *Id.* "The issue of a warning's adequacy is factual and usually will be resolved by the trier of fact." *Id.* (citing *Wyeth Laboratories, Inc. v. Fortenberry,* 530 So. 2d 688, 692 (Miss. 1988)). In cases, such as this one, where an inadequate warning claim is based on the absence of a warning that should have been given, reliance on the manufacturer's warning is not an element of that claim. *Id.*

Plaintiff properly asserted an inadequate warning claim in his Complaint. No warning of the defect made clear in the FDA letter (discussed extensively above) was issued to Dr. Walsh or Plaintiff. Globus does not assert in their Motion to Dismiss that they provided Dr. Walsh with any warning.

As discussed extensively above, it is clear from the FDA letter that Globus knew or should have known of the dangerous defect in its device. Given Globus' failure to officially acknowledge this defect despite having adequate warning of same, its own willful ignorance rendered it unable or unwilling to warn surgeons of the danger that this device may cause screws to be misplaced during surgery. Therefore, Globus did not warn Dr. Walsh of the recurring danger of screws being misplaced during spinal surgery and Dr. Walsh subsequently did not warn Plaintiff.

Despite its knowledge, Globus failed to investigate these incidents of injury to avoid the need to warn of this dangerous defect. The FDA letter tells us that Globus repeatedly failed to sufficiently investigate injuries and deaths during surgery with its EGPS device and failed to timely report these injuries and deaths to the FDA. (Doc. 1-4, pp. 2, 3, 4). Because of the lack of warning, Dr. Walsh did not have the informed option to use a different robotic guidance system in Plaintiff's surgery. With an adequate warning, Dr. Walsh could have chosen to use a different robotic surgical

12

system, or none at all, and thus prevented Plaintiff's injuries. If Dr. Walsh had known, through an adequate warning, of the EGPS' history of malfunction, there is at least a question of fact as to whether she would have used a different surgical navigation device in Plaintiff's surgery, or none at all. Unlike in *Little v. Smith & Nephew* (cited by Globus), where the plaintiff failed to allege defendants failed to warn the physician, *Little,* 2015 WL 3651769 at p. *9, here, Plaintiff alleged failure to warn the Plaintiff **and Dr. Walsh**. (Doc. 1, ¶ 40(d)). Without any warning of the defect, Dr. Walsh used Globus' EGPS device in Plaintiff's surgery resulting in injuries caused by the defect. Therefore, Globus' lack of a warning makes the product defective and unreasonably dangerous. This lack of a warning was a proximate cause of Plaintiff's injuries.

### iii. The Complaint and FDA letter plead sufficient facts that Globus breached its express warranty on its EGPS device upon which Plaintiff and Dr. Walsh relied.

An express warranty is "any affirmation of fact or promise which concerns the product and becomes part of the basis of the purchase of the product." *Forbes v. GMC,* 935 So. 2d 869, 876 (Miss. 2006). As in *Huntley v CL Medical SARL*, where the court found sufficient facts pled for a plausible express warranty claim in representations by the manufacturer of the product's effectiveness, *Huntley v CL Medical SARL*, 14-105, 2015 WL 5521796, at *3-*4 (S.D. Miss. Sept. 16, 2015), here, the Complaint cites Globus' "representation that the EGPS device was sufficiently capable of aiding surgeons in the placement of surgical screws." (Doc. 1, ¶ 40). As in *Huntley*, this is sufficient for a facially plausible express warranty claim at the motion to dismiss stage.

### iv. In the alternative, Plaintiff requests leave to amend his Complaint after adequate time to engage in discovery.

Plaintiff maintains that he has stated a plausible express warranty claim. However, should this Court disagree, the court has granted plaintiff leave to amend where it has found insufficient specific statements asserted for a plaintiff's express warranty claim. *Arnoult*, 2015 WL 5554301, at *4 (S.D. Miss. Sept. 21, 2015). Should this Court find that Plaintiff has not pled sufficient facts to adequately state a claim under the MPLA, Plaintiff requests the Court grant him leave to amend his complaint and allow Plaintiff to conduct limited discovery related to this amended complaint. When a court finds a plaintiff's complaint fails to state a claim, it should not dismiss a claim "without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so." *Deese*, 2012 WL 463722 p. *2. The court "should generally give the plaintiff a chance to amend the complaint under

Rule 15(a) before dismissing the action with prejudice, unless it is clear that to do so would be futile." *Breaux v. Globus Medical, Inc.*, No. 16-872, 2017 WL 11676245 at *2 (W.D. La. Jan. 8, 2017) (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

In *Breaux v. Globus Medical, Inc.*, a medical device product liability case against the same manufacturer as here, the court found "justice require[d] the amendment", denying Globus' motion to dismiss and granting plaintiff leave to amend and adequate time for the discovery necessary for that amendment. *Breaux*, 2017 WL 11676245 at *2. Drawing on "judicial experience and commonsense review" as *Iqbal* requires, *Iqbal*, 556 U.S. 662, 679 (2009), the *Breaux* court found allowing amendment would not unduly prejudice Globus and the amendment was not futile. *Id.* Similarly here, allowing Plaintiff to amend and adequate time for the discovery necessary to that amendment is in the interest of justice.

The EGPS device is not readily available to Plaintiff, and he has not had access to it or the data pertinent to his surgery stored in the device. He cannot simply purchase one for inspection and testing. He cannot send it to an expert for analysis. Further, he has no medical license or experience. Instead, Plaintiff must avail himself of the judicial process and obtain access through discovery to gain the information required to prove his claims. Without access to the specific EGPS device used in Plaintiff's surgery and Globus' internal records of previous incidents from this device and EGPS devices generally, all of which must be sought through discovery, Plaintiff cannot specify whether this is a defect in this specific device or a design defect affecting all of Globus' EGPS devices.[2] If the level of specificity that Globus alleges is necessary here were required at the pleading stage, all products liability claims would be dismissed before discovery.

The federal courts have repeatedly denied motions to dismiss from this defendant, Globus Medical, Inc., under similar circumstances, and additionally allowed plaintiffs time to amend. *See Breaux*, No., 2017 WL 11676245; *Boos v. Globus Medical, Inc.* No. 20-2694, 2021 WL 662128 (E.D. La. Feb. 19, 2021); *Seavey v. Globus Medical, Inc.*, No. 11-2240, WL 253116 (D. N.J. Jan. 26, 2012). In *Boos v. Globus Medical, Inc.*, the court found the complaint facially plausible but "encourage[d] plaintiff to amend complaint within ten days to provide further details." *Boos,* 2021

---

[2] For instance, Globus has identified, but not produced, various documents and other discoverable data in its pre-discovery disclosure, including identification of Michael Murphy as the relevant manager for Globus, studies of the performance of the EGPS device generally, and the labeling, design history file, training resources and service records for this particular EGPS device. This information will go a long way toward Plaintiff further developing his case.

WL 662128 at *2. In *Seavey,* the court found the plaintiff had asserted a "legally sufficient factual basis" for his express warranty claim when he stated that the defendant had made "four promises regarding safety and suitability of their product for his specific surgery." *Seavey*, 2017 WL 253116 at *2. Similarly, here, Plaintiff stated that the Globus made "representations that the EGPS device was sufficiently capable of aiding surgeons in the placement of surgical screws, the task undertaken by Dr. Walsh and otherwise guiding surgical instruments at the time the product failed and Mr. Nalder sustained injury." (Doc. 1, ¶ 40). As shown above, the federal courts have repeatedly rejected similar efforts by Globus Medical to defeat facially plausible claims with motions to dismiss.

Plaintiff concedes that its implied warranty claim is subsumed by the MPLA.

## CONCLUSION

Plaintiff asserts sufficient facts for each element of his MPLA claim, and his MPLA claim is facially plausible. The omission of a citation to the MPLA in this claim is not valid grounds for dismissal. Globus' Motion to Dismiss should be denied.

WHEREFORE, for the reasons set forth above, Plaintiff, Maxwell D. Nalder, respectfully requests that this Court deny Defendants', Globus Medical, Inc. and Globus Medical North America, Inc., Motion to Dismiss.

Respectfully submitted,

**GAINSBURGH, BENJAMIN, DAVID, MEUNIER & WARSHAUER, L.L.C.**

BY: */s/ Walter C. Morrison, IV*
**Walter C. Morrison, IV (MSB NO. 9653)**
240 Trace Colony Park Drive, Suite 100
Ridgeland, Mississippi 39157
Telephone: (601) 933-2054
Facsimile: (504) 528-9973
E-mail: wmorrison@gainsben.com

*Attorney for Plaintiff, Maxwell D. Nalder*

## CERTIFICATE OF SERVICE

I, Walter C. Morrison, IV, hereby certify that on February 26, 2026, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/Walter C. Morrison, IV*
**WALTER C. MORRISON, IV**

15