# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### NORTHERN DIVISION

| | |
|---|---|
| MAXWELL D. NALDER, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| V. | ) |
| | ) CIVIL ACTION NO: 3:25-CV-933- |
| KELSEY A. WALSH, M.D.; GLOBUS | ) DPJ-ASH |
| MEDICAL, INC.; AND GLOBUS | ) |
| MEDICAL NORTH AMERICA, | ) |
| INC., | ) |
| | ) |
|    Defendants. | ) |

## GLOBUS MEDICAL, INC. AND GLOBUS MEDICAL NORTH AMERICA, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS

Defendants Globus Medical, Inc. and Globus Medical North America, Inc. (collectively, "Globus") submit this reply brief in support of their motion to dismiss Plaintiff Maxwell Nalder's Complaint for failure to state a claim [Doc. 13].

## INTRODUCTION

Discovery is not a tool to fish for facts that might support a lawsuit. The federal pleading standard safeguards that principle. It requires a plaintiff to allege sufficient, nonconclusory facts to support each element of his cause of action. Those well-pleaded facts must be sufficient to nudge liability from conceivable to plausible. Unless and until a plaintiff meets that standard, the burdens of discovery should not be imposed.

This Complaint falls short. The only relevant *fact* alleged is that Dr. Walsh told Plaintiff that the EGPS device "rediagrammed" during surgery. Even accepting

1

that allegation as true,[1] the Complaint lacks facts sufficient to establish each element of Plaintiff's various MPLA claims. The Court therefore "must dismiss" these claims. *Amin v. United Parcel Serv., Inc.*, 66 F.4th 568, 572–73 (5th Cir. 2023) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## REPLY ARGUMENT

Despite cramming every Mississippi product-liability theory into a single count for "strict liability," Plaintiff concedes in his opposition that he seeks "recovery solely under the MPLA." Pl.'s Br., [Doc. 25] at 5.[2] Fair enough. But the Complaint still lacks well-pleaded facts that show an entitlement to relief under any of the MPLA's statutorily defined theories. Plaintiff has not pleaded any claim. And his opposition shows he cannot cure that failure. The Court should grant Globus's motion, dismiss Plaintiff's Complaint, and deny leave to amend.

## I.    Plaintiff must meet the federal pleading standard for every claim pursued under the MPLA.

The MPLA creates four statutorily defined claims for injuries caused by a defective product: (1) manufacturing defect claims; (2) claims for inadequate warning or instructions; (3) design defect claims; and (4) claims for breach of an express warranty or failure to conform to express factual representations upon which a claimant justifiably relies in electing to use the product. Miss. Code Ann. § 11-1-

---

[1] Dr. Walsh denies that allegation. *See* Answer, [Doc. 11] ¶¶ 21, 23, 26, 29. Further, Plaintiff alleges that Dr. Walsh "noted no complications or problems during surgery." [Doc. 1] ¶ 19. More, Exhibit B attached to the Complaint shows that Dr. Walsh confirmed in her operative report (1) that "registration" of the EGPS device was "reviewed" against the fluoroscopic images and "confirmed to be accurate"; and (2) that after screws were inserted, "[p]lacement was confirmed with fluoroscopy" before the EGPS device was removed. [Doc. 1-2] at 2.

[2] Plaintiff concedes his implied-warranty claim. [Doc. 25] at 15.

63(a)(i)(1–4). The statute requires plaintiffs to prove other elements common to all these claims, *id.* § 11-1-63(a)(ii)–(iii), and some of these claims have additional, unique elements and defenses, *e.g., id.* §§ 11-1-63(b), 11-1-63(c), 11-1-63(e), 11-1-63(f). *See also id.* § 11-1-63(i) (incorporating common law defenses, which may vary depending on the facts and theory of the claim).

The point is that a plaintiff cannot plead a claim under the MPLA unless he alleges facts that, taken as true, demonstrate that the subject product was defective *in one of these statutorily defined ways*. Depending on the theory advanced, that task also requires pleading facts that satisfy any additional, unique elements applicable to that claim. In other words, it is not, as Plaintiff suggests, enough to cursorily "plead the existence of a defect[]." [Doc. 25] at 7. Rather, Plaintiff must plead facts that show the existence of a defect cognizable under the MPLA. And he must do so in compliance with the federal pleading standard. *Deese v. Immunex Corp.*, 2012 WL 463722, at \*\*1–2 (S.D. Miss. Feb. 13, 2012). This he's failed to do. *See* Globus's Br., [Doc. 14] at 6–20.

## II. Plaintiff has not plausibly alleged any claim that the MPLA recognizes.

Reproduced below are the only relevant, nonconclusory facts found in the body of the Complaint:

- Globus designed, manufactured, and sold the EGPS device that Dr. Walsh used during his surgery. [Doc. 1] ¶¶ 16, 37.

- Dr. Walsh's operative report noted no "complications or problems during surgery." *Id.* ¶ 19.

- After surgery, Dr. Walsh told Plaintiff that the EGPS device "rediagrammed itself" twice during surgery, causing her to misplace two

screws. She repositioned one of the screws but left the other. Plaintiff was injured. *Id.* ¶¶ 21, 23, 26, 27, 29, 33.

Based on these scant allegations, Count F of the Complaint crams every defect theory provided by the MPLA into one single count for "strict liability." *Id.* ¶¶ 37–42. But Count F adds no "further factual enhancement" to the Complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 577 (2007)). Nor does it pair any of the Complaint's *few* factual allegations with any of the Complaint's *many* alleged theories about the EGPS device's defective condition. *See id.* ¶¶ 37–42. Count F simply weaves "conclusory statements" into a "formulaic recitation of the elements" under the MPLA. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 577). None of these claims meet the federal pleading standard.

### A. Plaintiff has not plausibly alleged that the EGPS device materially deviated from specifications or like units.

"To state a claim that a product was defectively manufactured, plaintiffs must allege that the product 'deviated in a material way from the manufacturer's specifications or from otherwise identical units manufactured to the same manufacturing specifications.'" *Davis v. Cloplay Corp.*, 2019 WL 1231685, at *3 (S.D. Miss. Mar. 15, 2019) (quoting *Deese*, 2012 WL 463722, at *3).

Globus's opening brief pinpoints exactly why the Complaint fails: it pleads no facts about specifications, how this device was manufactured in a way that deviated from them, how the manufacturing process failed, or how this device differed from other units in the same product line. [Doc. 14] at 7–9. Plaintiff essentially concedes that he has not alleged any of these basic facts. And the three arguments he offers instead all fail.

*First*, Plaintiff argues that "it is neither possible nor necessary" to plead those facts at this stage. [Doc. 25] at 8. But the case law holds otherwise: "a plaintiff *must* 'allege *how* the subject product(s) deviated from the manufacturer's specifications or other units.'" *Austin v. Bayer Pharms. Corp.*, 2013 WL 5406589, at *6 (S.D. Miss. Sept. 25, 2013) (emphasis added) (quoting *Adams v. Energizer Holdings, Inc.*, 2013 WL 1791373, at *3 (S.D. Miss. Apr. 19, 2013)); *see also Funk v. Stryker Corp.*, 631 F.3d 777, 782 (5th Cir. 2011); *Deese*, 2012 WL 463722, at *3; *Davis*, 2019 WL 1231685, at *3; *Taylor v. Smith & Nephew, Inc.*, 2019 WL 6617404, at *2 (S.D. Miss. Dec. 5, 2019); *Gulfstream Prop. & Cas. Ins. Co. v. Alarm.com, Inc.*, 2022 WL 1541290, at *5 (S.D. Miss. May 16, 2022).

*Second*, Plaintiff plucks two of these cases and argues that this one is distinguishable because the operative complaint has yet to be amended. *See* [Doc. 25] at 9 (discussing *Taylor* and *Gulfstream Property*). Whether a complaint meets the federal pleading standard is not dependent on which iteration of the pleading is before the Court.

*Finally*, Plaintiff misses the relevant takeaway from *Estes v. Lanx, Inc. See* [Doc. 25] at 9–10. The fact that *Estes* was on summary judgment does not dilute the legal principle: allegations and proof of a malfunction do not alone work a manufacturing defect claim. 2015 WL 9462964, at *4 (N.D. Miss. Dec. 23, 2015) (citing *Shelter Ins. Co. v. Mercedes-Benz USA, LLC*, 236 F. App'x 45, 47–48 (5th Cir. 2007)); *cf. Casey v. Toyota Motor Eng'g & Mfg. N. Am., Inc.*, 770 F.3d 322, 327–28 (5th

5

Cir. 2014) (explaining how, under Texas's similar products-liability statute, speculation that a defect existed cannot be based on product failure alone).

In short, the Complaint alleges that the device "rediagrammed" itself and concludes, from that alone, that a manufacturing defect existed. That falls short.

**B.    Plaintiff has not plausibly alleged a claim for design defect.**

As Globus has explained—and Plaintiff does not dispute—the existence of a feasible design alternative is a necessary element of a design-defect claim. *See* [Doc. 14] at 12–15; [Doc. 25] at 10–11. As Globus has also explained, naked conjecture about the existence of a feasible design alternative does not suffice to meet the federal pleading standard. *See* [Doc. 14] at 12–15. On that part, the parties disagree.

Plaintiff's counterargument is that his recitation of the magic words, coupled with page two of the FDA letter attached, saves this claim from dismissal. *See* [Doc. 25] at 11 (citing [Doc. 1-4] at 2). Not so.

"Rule 8 requires more than a bare assertion that safer alternative products exist." *Young v. Bristol-Myers Squibb Co.*, 2017 WL 706320, at *9 (N.D. Miss. Feb. 22, 2017). Globus has cited numerous cases to that same effect. *See* [Doc. 14] at 14–15. Further, as with other portions of Plaintiff's opposition, he stretches the FDA letter too far. Whether Globus has historically employed an FDA-compliant statistical methodology to discern which complaints require corrective and preventive action investigations says nothing about whether a feasible alternative design exists for the EGPS device that would not impair the device's utility, usefulness, practicality, or desirability. *See* [Doc. 1-4] at 2.

6

Plaintiff responds to Globus's other design-defect argument by telling half the story about the EGPS device's intended purpose and attempting to distinguish the cases cited by Globus—those that have dismissed design-defect claims of a similar ilk. *See* [Doc. 25] at 10–11.

***First***, Plaintiff argues that "the EGPS device is specifically designed to precisely locate screws during surgery," so "the misplacement of screws during surgery is a sufficient allegation at the pleading stage to demonstrate that the product is defectively designed." *Id.* at 10. Even if that were the whole story, it would "merely" be "consistent" with Globus's liability—"stop[ping] short of the line between possibility and plausibility" of a defect in design. *Iqbal*, 556 U.S. at 678 (quotation omitted).

The Complaint, however, admits this is not the whole story. It alleges the EGPS device is "intended for use *as an aid*" for aligning and navigating surgical screws, provided that the surgeon verifies locational accuracy before insertion. [Doc. 1] ¶ 17 (emphasis added); *see also* [Doc. 14] at 1–2. Moreover, as Plaintiff eagerly notes, the Court may consider documents attached to the Complaint. [Doc. 25] at 5. But the FDA Letter is not the only attachment to the Complaint; Exhibit B contains this snippet from Dr. Walsh's operative report:

> Next, the registration devise for the Globus Excelsior navigation unit was placed in the patient's right PSIS. Next, both AP and lateral C-arm images were obtained and the patient was registered to the robot. The registration was reviewed and confirmed to be accurate. We then placed K wires at L4, L5 and S1 on the left, and pedicle screws at L4, L5, and S1 on the right, under robotic guidance. Placement was confirmed with fluoroscopy, and the registration devise was removed.

[Doc. 1-2] at 2. Exhibit B also contains an allegation that "Dr. Walsh failed to obtain a post-operative MRI." *Id.* Plaintiff flushes these facts out by alleging that Dr. Walsh's operative report noted no "complications or problems during surgery." *Id.* ¶ 19. Taking all this together, the Court cannot draw the reasonable inference that the EGPS device "failed to function as expected" or that the EGPS device "proximately caused" Plaintiff's alleged damages. Miss. Code Ann. §§ 11-1-63(f)(ii), 11-1-63(a)(iii).

***Second***, Plaintiff cannot meaningfully distinguish this case from those relied upon by Globus. Like those cases, the allegations here amount to "something went wrong while the device was used, so it must be defectively designed." *See* [Doc. 14] at 13 (citing cases). The *Mullen v. Bell Helicopter Textron, Inc.* case exemplifies this shortcoming. 2015 WL 11120331 (S.D. Miss. Aug. 17, 2015).

There, the plaintiff alleged that the helicopter was in flight, that the horns sounded, that the pilot said the helicopter lost power, and that the helicopter crashed. *Id.* at \*\*1–2. The plaintiff contributed his failure to plead more detailed allegations to his inability to examine the helicopter. *Id.* at \*2.

Here, Plaintiff says that the EGPS device was used in his surgery, that his doctor noted no issues about his surgery in her operative report, that his doctor later told him that the EGPS device "rediagrammed" during surgery, and that she misplaced the surgical screws. Like the plaintiff in *Mullen*, Plaintiff contributes his failure to plead more detailed allegations to his inability to examine the device.

This claim should be dismissed.

8

### C.    Plaintiff has not plausibly alleged a failure-to-warn claim.

Globus's opening brief details the law governing the sufficiency of Plaintiff's allegations and explains how the Complaint fails to meet the federal pleading requirements for a failure-to-warn case within the medical device context. *See* [Doc. 14] at 9–12. In response, Plaintiff relies entirely on a Mississippi Supreme Court case about asbestos, citing it for a proposition that has little to do with what's required in this context to plead a failure-to-warn claim in federal court. *See* [Doc. 25] at 12 (citing *Union Carbide Corp. v. Nix*, 142 So. 3d 374, 380 (Miss. 2014)). Aside from that, Plaintiff again milks the FDA letter for an inference it does not support. *See* [Doc. 25] at 12. This claim should be dismissed.

*First*, the Complaint pleads no facts about the warnings and instructions given (or not given) to the hospital and/or Dr. Walsh about the EGPS device. While Plaintiff does not make it entirely clear what he alleges, he does not allege that *no* warnings or instructions were provided to the hospital and its neurosurgeons about the use of this device. In fact, other than simply concluding they were "inadequate," he says nothing about the warnings and instructions. And even if he had pleaded a fact or two about them, the total lack of detail about what allegedly went wrong would prevent Globus and the Court from judging whether the warnings and instructions measure up.

*Second*, the Complaint does not allege that "a reasonable physician in [Dr. Walsh's] position would not have used the [EGPS device] if [s]he had received an adequate warning." *Little v. Smith & Nephew, Inc.*, 2015 WL 3651769, at *9 (N.D. Miss. June 11, 2015); *Deese*, 2012 WL 463722, at *5 (dismissing failure to warn claim

where complaint fell "short of alleging that an adequate warning would have kept [the] physician from prescribing [the drug]"). That's a fatal omission.

Moreover, and again, the Complaint alleges that the EGPS device serves as an "aid" for aligning and navigating surgical screws, provided that locational accuracy can be verified with other imaging devices. *See* [Doc. 1] ¶ 17. Although Plaintiff alleges that Dr. Walsh said that the EGPS "rediagrammed," he also alleges that she noted "no complications or problems during surgery," *id.* ¶ 19, and that she said in her report that—after inserting the screws—she "confirmed" placement "with fluoroscopy" before she removed the device, [Doc. 1-4], at 2. Obviously, many of these allegations contradict each other. But regardless of what occurred, it's obvious that the need to rely on all available tools to ensure locational accuracy of surgical screws falls within the "ordinary knowledge common to" neurosurgeons like Dr. Walsh. Miss. Code Ann. §§ 11-1-61(c)(ii), (e). The Complaint even acknowledges as much in its cursory description of the EGPS device's intended purpose. [Doc. 1] ¶ 17.

***Third***, Plaintiff's attempt to use the FDA letter as support for his conclusory failure-to-warn/failure-to-instruct allegations collapses upon review of the document itself.

The letter says nothing about Globus's labeling or surgeon-directed warnings and instructions. Instead, the letter focuses entirely on internal processes. For example, page two details how Globus revised its Standard Operating Procedures to require trend analysis and risk reconciliation before determining whether a corrective and preventative action investigation ("CAPA") is warranted for any given

complaint. [Doc. 1-4] at 2. On this subject, the FDA's "overarching concern" was that Globus had not employed "an appropriate statistical methodology" in making CAPA decisions. *Id.* The letter goes on to fault Globus for insufficient details in two of its complaint records. *Id.* at 2–3. But the letter acknowledges that Globus submitted one of these to the FDA as a Medical Device Report ("MDR"). *Id.* at 3. It also acknowledges that Globus provided the FDA a revised complaint investigation procedure, but the agency noted that it lacked clarity on whether these "corrective actions" would be implemented before the date Globus promised the "next update[,] . . . July 31, 2024." *Id.* For other MDRs submitted to the FDA by Globus, the agency took issue with (1) late submissions beyond 30 days, (2) the "reporting event" labeling of one MDR as a "malfunction" instead of "serious injury," and (3) the fact that the agency had yet to receive the MDRs for two other complaints. *Id.* at 3–4.

This letter was sent on July 15, 2024—half a year before Plaintiff underwent surgery. The letter does not accuse Globus of manufacturing a defective product, nor does it make any finding about whether Globus provides adequate warnings and instructions to the neurosurgeons who use this product. At most, the letter accuses Globus of failing to take all the necessary steps required by federal regulations to determine whether any given EGPS device malfunctioned and to timely communicate the findings of those investigations to the FDA. Again, "the words 'Warning Letter' are not a band-aid for scant pleadings." [Doc. 14] at 18.

This claim should be dismissed.

**D.  Plaintiff has not plausibly alleged breach of an express warranty.**

Plaintiff relies solely on *Huntley v. CL Medical SARL*, but the allegations there involved more concrete factual representations. 2015 WL 5521796, at *3. The plaintiff in *Huntley* alleged that the defendant expressly touted the product's superior safety, effectiveness, and reliability, as well as the "fast," "minimally invasive" procedure for its installation, making it clinically superior to competing pelvic mesh products. *Id.* By comparison, Plaintiff alleges that Globus represented "that the EGPS device was sufficiently capable of aiding surgeons in the placement of surgical screws." [Doc. 25] at 13 (quoting [Doc. 1] ¶ 40(b)).

But that amounts to a vague, generic description of the device. A helpful analogy: an express warranty claim based on a representation that a "ladder is sufficiently capable of aiding individuals in accessing elevated surfaces" would fail. But an express warranty claim based on representations that the steps of the ladder are "capable of holding individuals weighing over 400 pounds" might survive Rule 12(b)(6). In the medical device context, vague allegations like Plaintiff's often fail the federal pleading standard. *See Wildman v. Medtronic, Inc.*, 874 F. 3d 862, 870 (5th Cir. 2017) (collecting cases).

Summed up, this vague "sufficiently capable" allegation parallels the vague "reasonably safe" allegations made in *Deese*, 2012 WL 463722, at *6. And this Court dismissed that claim, noting that the complaint "fail[ed] to identify . . . any express warranty or express factual representation made by [d]efendants that they allegedly breached." *Id.* (citing *Iqbal* and *Twombly*); *see also Riddell*, 2015 WL 5167039, at *8

12

(dismissing claim where plaintiff alleged that the product "failed to do what [defendant] stated it would do on its packaging and labeling, among other things").

This claim should be dismissed.

## III.    Leave to amend should be denied, because Plaintiff tacitly admits he cannot plead a claim.

Plaintiff's alternative request for leave to amend should be denied because his opposition confirms that he does not possess the facts necessary to plead a viable claim under the MPLA.  *See* [Doc. 25] at 14 (acknowledging "Plaintiff cannot specify whether this is a defect in this specific device or a design defect affecting all of Globus' EGPS devices"). Plaintiff's solution is to plead *every* MPLA defect theory simultaneously, despite lacking facts to support any one of them, while using discovery as a "fishing expedition[]" to hopefully "manufacture" one that might stick. *Holloway v. Equifax*, 2024 WL 2747734, at *3 (N.D. Tex. May 29, 2024); *see also* [Doc. 25] at 13 (requesting "leave to amend his complaint and allow [him] to conduct limited discovery related to this amended complaint").[3]

That gets things backwards. A plaintiff "may not survive a Rule 12(b)(6) motion to dismiss simply by contending that further discovery is needed." *Herbert v. Citimortgage, Inc.*, 2020 WL 13441542, at *3 (S.D. Miss. Dec. 10, 2020). Courts "cannot excuse failure to plead facts relating to a necessary element of a claim on the ground that discovery will reveal those necessary facts." *TEU Servs., Inc. v.*

---

[3] Plaintiff "failed to separately docket his Motion to Amend Complaint as required by Local Rule 7(b)(3)(C)." *Deese*, 2012 WL 463722, at *7 n.8; *see also* L.U. Civ. P. 7(3)(C). He also failed to suggest "how the alleged deficiencies in his Complaint could be cured, provide any facts to cure those deficiencies, or proffer a proposed complaint." *Davis*, 2019 WL 1231685, at *5 (collecting cases); *accord, e.g., Douglas v. DePhillips*, 740 F. App'x 403, 406 (5th Cir. 2018).

*Inventronics USA, Inc.*, 2018 WL 3338217, at \*10 (W.D. Tex. Feb. 5, 2018). As one court aptly put it, "[t]he discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable without discovery, *not to find out if it has any basis for a claim.*" *Smith v. Thibodeaux*, 2024 WL 1335649, at \*6 (M.D. La. Mar. 28, 2024) (emphasis in original and citations omitted). These principles spring from nearly 20 years of Supreme Court precedent. *See Deese*, 2012 WL 463722, at \*7 (quoting *Iqbal*, 556 U.S. at 678–79). The Court should enforce them here and deny leave to amend.

## CONCLUSION

Plaintiff has failed to state a claim and acknowledges that he lacks facts to do so without discovery. Accordingly, the Court should grant Globus's Motion to Dismiss, dismiss Plaintiff's Complaint, and deny Plaintiff leave to amend.

**RESPECTFULLY SUBMITTED**, this 5th day of March 2026.

*/s/ P. Garner Vance*
Michael C. Williams (MSB 104537)
P. Garner Vance (MSB 106706)
BRADLEY ARANT BOULT CUMMINGS LLP
One Jackson Place
188 East Capitol Street, Suite 1000
Jackson, MS 39201
Telephone: (601) 948-8000
E-mail: mcwilliams@bradley.com
E-mail: gvance@bradley.com

R. Craig Mayfield (admitted *Pro Hac Vice*)
BRADLEY ARANT BOULT CUMMINGS LLP
1001 Water Street, Suite 1000
Tampa, FL  33602
Telephone:813-559-5525
E-mail: cmayfield@bradley.com

*Counsel for Defendants Globus Medical, Inc. and Globus Medical North America, Inc.*

14

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day served a true and correct copy of the above and foregoing document via the Court's CM/ECF filing system, which sends notification of such filing to all counsel of record.

THIS, 5th day of March 2026.

*/s/ P. Garner Vance*
P. Garner Vance