UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

MAXWELL D. NALDER                                                          PLAINTIFF

V.                                              CIVIL ACTION NO. 3:25-CV-933-DPJ-ASH

KELSEY A. WALSH, M.D., GLOBUS
MEDICAL, INC., AND GLOBUS MEDICAL
NORTH AMERICA, INC.                                                      DEFENDANTS

ORDER

This product-liability case is before the Court on Defendants' Motion to Dismiss [13].
For the reasons stated below, the Court grants the motion as to the breach-of-express warranty
and failure-to-warn claims but will allow Plaintiff to seek leave to file an amended Complaint as
to those counts.  The implied-warranty claim is dismissed with prejudice.  The motion is
otherwise denied.

I.      Facts and Procedural Background

In 2024, Plaintiff Maxwell D. Nalder started experiencing back pain.  Compl. [1] ¶ 9.
Seeking relief, he sought treatment at NewSouth NeuroSpine from Defendant Kelsey A. Walsh.
*Id.* ¶ 11.  Dr. Walsh examined Nalder and recommended a "minimally invasive" transforaminal
lumbar interbody fusion.  *Id.* ¶ 13.

On January 16, 2025, Nalder went to Merit Health River Oaks for Dr. Walsh to perform
the surgery.  *Id.* ¶ 14.  During the surgery, Dr. Walsh used a Globus Excelsius GPS (EGPS).  *Id.*
¶ 16.  An EGPS is a "surgical robot" Defendants Globus Medical, Inc. (Globus Medical) and
Globus Medical North America, Inc. (GMNA) manufactured.  *Id.*  Dr. Walsh used the EGPS to
place multiple pedicle screws in Nalder's back.  *Id.* ¶ 18.  After the surgery, Dr. Walsh informed

Nalder that the "robotic arm had malfunctioned and that the L5 right pedicle screw was drilled in the wrong location." *Id.* ¶ 21.

Before discharging Nalder, Dr. Walsh performed a neurological evaluation and found that his right foot "was weak and without flexion." *Id.* ¶ 22. She observed the same neurological deficits during three follow-up examinations. *Id.* ¶¶ 26–28. During his final visit, Nalder asked Dr. Walsh how the EPGS malfunctioned. *Id.* ¶ 29. Dr. Walsh explained the device "rediagrammed" itself onto the incorrect vertebrae, causing her to initially misplace the screw. *Id.* She therefore had to reposition the screw during the surgery. *Id.*

On December 5, 2025, Nalder sued Dr. Walsh, Globus Medical, and GMNA. He asserted three causes of action: (1) medical malpractice against Dr. Walsh, *id.* ¶¶ 34–36; (2) strict liability against Globus Medical and GMNA, *id.* ¶¶ 37–42; and (3) breach of implied warranty against Globus Medical and GMNA, *id.* ¶¶ 43–49. On January 13, 2026, the two corporate Defendants filed a motion to dismiss the claims against them. Mot. [13]. Subject-matter jurisdiction exists to consider that motion because the parties are completely diverse.

II.    Standard of Review

When considering a motion under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam)). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To overcome a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555 (citations and footnote omitted). "This standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co.*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

Finally, "a plaintiff's failure to meet the specific pleading requirements should not automatically or inflexib[ly] result in dismissal of the complaint with prejudice to re-filing." *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000) (citation omitted). Thus, "[a]lthough a court may dismiss the claim, it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so." *Id.* (citation omitted).

III.    Analysis

Defendants take issue with Nalder's various strict-liability theories on multiple fronts. The Court first addresses Defendants' argument that Nalder failed to state a claim because he omitted any reference to the Mississippi Products Liability Act (MPLA). It then addresses whether Nalder stated a claim under the MPLA.[1]

A.    Pleading an MPLA Claim

As Defendants note, Nalder doesn't cite the MPLA in his Complaint. *See* Defs.' Mem. [14] at 6. They therefore contend that the Court must dismiss Nalder's case because Mississippi

---

[1] Since Plaintiff concedes the MPLA subsumes his implied-warranty count, the Court grants the motion to dismiss this claim with prejudice. *See* Pl.'s Mem. [25] at 15.

no longer recognizes common-law claims against manufacturers. *See id.* (citing *Jackson v. Monsanto Co.*, No. 5:18-CV-13-DCB-MTP, 2018 WL 3995799, at *2 (S.D. Miss. Aug. 16, 2018)).

While Nalder doesn't cite the MPLA in his Complaint, that omission is not fatal. "Federal pleading rules call for 'a short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. Rule Civ. Proc. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (reversing dismissal of constitutional claims pled without reference to 42 U.S.C. § 1983).

Viewing the Complaint as a whole, Nalder's allegations under his "strict liability" header track the MPLA, even if he failed to cite the Act. Compl. [1] at 6. And Nalder acknowledges in his response that his claims fall under the MPLA. Pl.'s Mem. [25] at 5. The Court therefore rejects Defendants' threshold argument that the Complaint must be dismissed for failing to cite the MPLA. *See Johnson*, 574 U.S. at 11; *see also Patten v. Matco Tools Corp.*, No. 1:24-CV-83-LG-RPM, 2024 WL 3184640, at *1 (S.D. Miss. June 26, 2024) (finding allegations, when "taken as a whole[,] . . . plainly state elements of a claim under the MPLA" despite using "Strict Liability" as heading).

B.    MPLA Claims

The MPLA "provides a remedy for individuals injured by a product." *Davis v. Cloplay Corp.*, No. 1:18-CV-207-HSO-JCG, 2019 WL 1231685, at *2 (S.D. Miss. Mar. 15, 2019). To state such claims, a plaintiff must show that the product was defective when it left control of the manufacturer, designer, or seller. Miss. Code Ann. § 11-1-63(a). Defects include (1) material

deviation from design specifications, (2) failure to adequately warn, (3) defective design, or (4) breach of an express warranty. *Id.* § 11-1-63(a)(i)(1)–(4).

To recover under any of these defects, a plaintiff must also prove that "[t]he defective condition rendered the product unreasonably dangerous to the user or consumer" and that "[t]he defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought." *Id.* § 11-1-63(a)(ii)–(iii). Nalder alleges that the EGPS surgical robot was defective in every way the MPLA recognizes. *See* Compl. ¶ 40.

A. Nalder's Facts

Nalder's Complaint includes many legal conclusions, but it also includes two well-pleaded facts. First, the surgeon observed the EGPS malfunction. *Id.* ¶ 21. Second, the FDA sent Globus Medical a warning letter on July 15, 2024, regarding compliance issues related to its EGPS surgical robot. *See* FDA Letter [1-4] at 1. Because Nalder cites this same evidence for each MPLA theory, a closer look is appropriate.

*Malfunction*. According to Nalder, Dr. Walsh repeatedly told him the EGPS malfunctioned. Compl. [1] ¶¶ 21, 23, 26–27, 29. She explained that it "'rediagrammed' itself on Mr. Nalder's L4 vertebrae causing her to first misplace the screw then to have to reposition it intraoperatively." *Id.* ¶ 29. The EGPS then did the same thing on his "right side causing her to misplace the L5 pedicle screw." *Id.*

*FDA letter.* Six months before the EGPS allegedly malfunctioned by misplacing screws during Nalder's surgery, the FDA sent Globus Medical a warning letter. FDA Letter [1-4] at 1. It addressed Defendants' "Class II Excelsius GPS (EGPS) surgical robot and associated interbody spine and cranial modules intended for use as an aid for precisely locating anatomical

5

structures and for the spatial positioning and orientation of an instrument holder or guide tube to be used by surgeons." *Id.*

Nalder says this letter offers non-conclusory facts making a defect plausible. *See, e.g.,* Pl.'s Mem. [25] at 2. Defendants suggest that it merely addresses compliance issues:

> The FDA's findings are expressly about procedural compliance— how Globus investigated complaints, documented those investigations, and submitted [medical device reportings] MDRs. In other words, the letter does not accuse Globus of manufacturing a defective product; it accuses Globus of failing to take all the necessary steps that federal regulations require to determine whether any given EGPS device has a problem and to communicate the findings of those investigations to the FDA.

Defs.' Mem. [14] at 18.

Viewed in the light most favorable to Nalder, the FDA letter does more than Defendants acknowledge. The letter does cite Globus Medical for failing to comply with various federal requirements, noting numerous alleged violations related to the failure to investigate complaints or properly report them. *See generally* FDA Letter [1-4]. But it is *what* Globus Medical failed to investigate or properly report that matters for this motion. The FDA Letter includes this:

- An "inspection revealed that these devices are adulterated within the meaning of section 501(h) of the Act, 21 U.S.C. § 351(h), in that the methods used in, or facilities or controls used for, their manufacture, packing, storage, or installation are not in conformity with the current good manufacturing practices requirements of the Quality System Regulation found at Title 21, Code of Federal Regulations (CFR), Part 820)." *Id.* at 2.

- Globus Medical was cited for failing "to review, evaluate, and investigate complaints involving the possible failure of a device to meet any of its specifications." *Id.*

- The FDA cited Globus Medical for failing "to submit a report to the FDA no later than 30 calendar days after the day that your firm received or otherwise became aware of information, from any source, that reasonably suggests that a device that it markets has malfunctioned and this device or a similar device that your firm markets would be likely to cause or contribute to a death or serious injury, if the malfunction were to recur." *Id.* at 3–4.

6

- The letter gives examples, noting five complaints that "reasonably suggest[] that your firm's EGPS spinal robotic system malfunctioned (i.e., *misplaced screws*) while in use." *Id.* at 4 (emphasis added).

- Globus Medical's response to the investigation "noted that [it] conducted a retrospective review of complaints received for misplaced screws since the device launched in 2017 and identified 77 complaints that represent MDR reportable events." *Id.*

In short, Nalder pleads facts indicating that the EGPS surgical robot Dr. Walsh used malfunctioned by misplacing two screws. He also offers an FDA letter indicating that six months before his surgery, Defendants were aware of EGPS "malfunction[s]" involving "misplaced screws" and had received 77 complaints about MDR reportable events. *Id.*

B.      Design and Manufacturing Claims

Defendants correctly note that Nalder has not pleaded key facts he may need to ultimately prove that the EGPS was defectively designed or manufactured. For example, to show a manufacturing defect, he would need to prove the EGPS "deviated in a material way from the manufacturer's or designer's specifications or from otherwise identical units manufactured to the same manufacturing specifications." Miss. Code Ann. § 11-1-63(a)(i)(1). Nalder has not said how the product deviated. Also, for his design defect claim to survive under Rule 56 or at trial, he would need to prove that when the product was sold, "there existed a feasible design alternative that would have to a reasonable probability prevented the harm." *Id.* § 11-1-63(f)(ii). Nalder doesn't mention one.

But the motion falls under Rule 12(b)(6), so Nalder must merely "nudge [his] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. And that inquiry allows the Court to make reasonable inferences, "draw[ing] on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Ultimately, the "standard simply calls for enough fact

7

to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements." *In re S. Scrap Material Co.*, 541 F.3d at 587 (quotation marks omitted).

Regarding products, the Fifth Circuit has noted that the information necessary to make specific allegations about product defects is often confidential and therefore inaccessible without discovery. *Bass v. Stryker Corp.*, 669 F.3d 501, 511 (5th Cir. 2012) (citing *Bausch v. Stryker Corp.*, 630 F.3d 546, 558 (7th Cir. 2010) (reversing dismissal of claim under Rule 12(b)(6) in hip-replacement case and holding that "[f]ormal discovery is necessary before a plaintiff can fairly be expected to provide a detailed statement of the specific bases for her claim")).

The Court acknowledges cases dismissing design- and manufacturing-defect claims because plaintiffs failed to specifically identify the deviation or offer alternative designs. For example, in *Taylor v. Smith & Nephew, Inc.*, this Court dismissed MPLA claims because the plaintiff merely alleged that the product was "defective in design and/or manufacture." No. 3:18-CV-234-DPJ-JCG, 2019 WL 6617404, at *2 (S.D. Miss. Dec. 5, 2019). The same thing happened in *Deese v. Immunex Corp.*, No. 3:11-CV-373-DPJ-FKB, 2012 WL 463722, at *3 (S.D. Miss. Feb. 13, 2012).

But inquires under Rule 12(b)(6) are context specific. *Iqbal*, 556 U.S. at 679. And Nalder offers more than the *Taylor* and *Deese* plaintiffs. Dr. Walsh allegedly said the EGPS malfunctioned in the same way the FDA Letter indicates the product failed many times before— misplacing surgical screws. *See* FDA Letter [1-4] at 4.[2] That Globus Medical received 77 similar complaints plausibly suggests that the defect existed when the product left its hands. *Id.*

---

[2] "Whether a malfunction alone is enough to prove a manufacturing defect is somewhat debatable." *Pittman v. Ford Motor Co.*, No. 5:23-CV-41-DPJ-ASH, 2026 WL 637270, at *4 (S.D. Miss. Jan. 12, 2026) (examining this issue but declining to decide it).

The Court finds that these non-conclusory facts raise "a reasonable expectation that discovery will reveal evidence of the necessary claims or elements." *In re S. Scrap Material Co.*, 541 F.3d at 587 (quotation marks omitted).  The motion to dismiss is denied as to the MPLA manufacturing- and design-defect claims.

C.      Failure to Warn

Nalder also claims that Defendants failed to include adequate warnings about the EGPS's potential to rediagram.  Compl. [1] ¶ 40(b).  He contends an ordinary user like Dr. Walsh "would not realize [the EGPS's] dangerous condition."  *Id.* ¶ 40(b)(ii).  Here, Nalder has failed to state a claim.

Under the MPLA, a manufacturer or seller is liable if "[t]he product was defective because it failed to contain adequate warnings or instructions."  Miss. Code Ann. § 11-1-63(a)(i)(2).  The plaintiff must prove that, at the time the product left the control of the manufacturer or seller, "the manufacturer, designer or seller knew or in light of reasonably available knowledge should have known about the danger that caused the damage for which recovery is sought and that the ordinary user or consumer would not realize its dangerous condition."  *Id.* § 11-1-63(c)(i).  A warning is "adequate" if it:

> is one that a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger and that communicates sufficient information on the dangers and safe use of the product, taking into account the characteristics of, and the ordinary knowledge common to an ordinary consumer who purchases the product; or in the case of a prescription drug, medical device or other product that is intended to be used only under the supervision of a physician or other licensed professional person, taking into account the characteristics of, and the ordinary knowledge common to, a physician or other licensed professional who prescribes the drug, device or other product.

*Id.* § 11-1-63(c)(ii).

A plaintiff must also prove the failure to warn "rendered the product unreasonably dangerous to the user or consumer" and that "[t]he defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought." *Id.* § 11-1-63(a)(ii)–(iii); *see also Thomas v. Hoffman-LaRoche, Inc.*, 949 F.2d 806, 811 (5th Cir. 1992) (finding under Mississippi law, "a product may be unreasonably dangerous if the manufacturer fails to warn of a non-obvious risk associated with the normal use of the product").

There's one more wrinkle. Mississippi follows the learned-intermediary doctrine, which provides that a "manufacturer's failure to warn the patient of the product's risks does not render the product defective or unreasonably dangerous so long as the manufacturer adequately warns the learned intermediary." *Thomas*, 949 F.2d at 811. The doctrine "applies to medical devices as well as prescription drugs." *Smith v. Johnson & Johnson Inc.*, 483 F. App'x 909, 913–14 (5th Cir. 2012) (citing *Moore v. Mem'l Hosp. of Gulfport*, 825 So. 2d 658, 662 n.6 (Miss. 2002)). "In order to make out a case for failure to warn under the learned[-]intermediary doctrine, the plaintiff must establish that the treating physician, or a reasonable physician in the treating physician's position, would not have used the product had he received an adequate warning." *Id.* at 914.

Defendants challenge the sufficiency of Nalder's pleadings on two grounds. First, they argue his failure-to-warn claim is conclusory with "no facts to support it." Defs.' Mem. [14] at 11. Second, they say Nalder failed to plead elements of the learned-intermediary doctrine, which applies here. *See id.* at 11–12. The Court agrees.

At a basic level, the Complaint fails to identify the warnings that Defendants gave. And, without knowing that, the Court cannot say whether it is plausible that Dr. Walsh would not have used the EGPS had she received a different warning. *Id.* at 11. This omission is fatal because a

10

failure-to-warn claim "is not completely stated" when it doesn't allege a plaintiff's physician would not have used the medical device had there been an adequate warning. *Deese*, 2012 WL 463722, at *5; *see also Little v. Smith & Nephew, Inc.*, No. 1:15-CV-28-GHD-DAS, 2015 WL 3651769, at *9 (N.D. Miss. June 11, 2015).

Nalder tries distinguishing his case from *Little*, arguing the Complaint at least mentions Dr. Walsh. *See* Pl.'s Mem. [25] at 13. While true, that's insufficient. Before noting the omission of the physician in the complaint, the *Little* court emphasized Little's failure "to allege that the physician would not have used the [device] if he had received an adequate warning." 2015 WL 3651769, at *9. Here, Nalder alleges that Dr. Walsh "would not *realize*" the EGPS's dangerous condition. Compl. [1] ¶ 40(b)(ii). But he doesn't indicate what she knew or would have done with a different warning. Because Nalder's failure-to-warn claim is not facially plausible, it cannot survive a 12(b)(6) motion. *See Twombly*, 550 U.S. at 570.

Although the failure-to-warn claim falls short of the pleading standard, the Court concludes that Nalder should be given the opportunity to plead his best case. *See Hart*, 199 F.3d at 247 n.6. Therefore, the Court dismisses the failure-to-warn claim without prejudice.

D.     Breach of Express Warranties

In his last MPLA claim, Nalder says Defendants "breached an express warranty or failed to conform to other express factual representations . . . that the EGPS device was sufficiently capable of aiding surgeons in the placement of surgical screws." Compl. [1] ¶ 40(d). But Nalder failed to identify the express warranties Defendants allegedly breached.

Under the MPLA's express-warranty-defect definition, a plaintiff must prove that "the product breached an express warranty or failed to conform to other express factual representations upon which the claimant justifiably relied in electing to use the product." Miss.

11

Code Ann. § 11-1-63(a)(i)(4). "An express warranty is any affirmation of fact or promise which concerns the product and becomes part of the basis for the purchase of such a product." *Austin v. Will-Burt Co.*, 232 F. Supp. 2d 682, 687 (N.D. Miss. 2002), *quoted in Forbes v. Gen. Motors Corp.*, 935 So. 2d 869, 876 (Miss. 2006).

Nalder claims, albeit under the conceded implied-warranty count, that Defendants warranted "expressly . . . through written materials, advertisements and sales representatives, that the EGPS device was of merchantable quality and fit for the ordinary purpose for which it was intended and distributed." Compl. [1] ¶ 43. Those conclusory allegations fall short because he doesn't identify the express warranties or representations that were allegedly breached. *See Deese*, 2012 WL 463722, at *6. To state an express-warranty claim, Nalder needed "to allege . . . specific statements or representations by" Defendants. *Arnoult v. CL Med. SARL*, No. 1:14-CV-271-KS-MTP, 2015 WL 5554301, at *5 (S.D. Miss. Sept. 21, 2015); *see also Austin v. Bayer Pharms. Corp.*, No. 5:13-CV-28-KS-MTP, 2013 WL 5406589, at *8 (S.D. Miss. Sept. 25, 2013) (dismissing express-warranty claim because plaintiff "failed to identify a specific factual representation or promise made by" defendant).

In sum, Nalder has not pleaded facts showing a plausible claim. *Twombly*, 550 U.S. at 570. But here again, the Court cannot say whether he has pleaded his best case on this theory, so he will receive an opportunity to amend his Complaint. For these reasons, the Court grants Defendants' motion and dismisses the express-warranty claim without prejudice. *See Hart*, 199 F.3d at 247 n.6.

IV.    Conclusion

The Court has considered all arguments presented. Any argument not specifically addressed would not affect the outcome. For the reasons explained above, the Court grants

Defendants' Motion to Dismiss [13] in part.  Nalder's implied-warranty claim is dismissed with prejudice, his express-warranty and failure-to-warn claims are dismissed without prejudice, and his design-defect and manufacturing-defect claims survive.  Nalder has 14 days from the date of this Order to file a motion seeking leave to amend.  That motion must comply with Local Uniform Civil Rules 7(b)(2) and 15.

**SO ORDERED AND ADJUDGED** this the 9th day of July, 2026.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE